


Search for Cases by: Select Search Method...

Judicial Links | eFiling | Help | Contact Us | Print          GrantedPublicAccess  Logoff JMARTINEAU

**15SL-CC02099 - CHARLES JOHNSON ET AL V GAWKER MEDIA LLC ET AL (E-CASE)**

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

This information is provided as a service and is not considered an official court record.

Click here to eFile on Case  Click here to Respond to Selected Documents  Sort Date Entries:  Descending ●  Ascending ○          Display Options: [All Entries ▾]

**06/30/2015**  ☐ **Affidavit for Service by Mail**

Affidavit of Service for Defendant Gawker Media; Electronic Filing Certificate of Service.
 **Filed By:** JONATHON CHRISTIAN BURNS
 **On Behalf Of:** CHARLES C JOHNSON, GOT NEWS, LLC

☐ **Notice of Service**

Notice of Summons for Defendant Gawker Media; Affidavit of Service; Electronic Filing Certificate of Service.
 **Filed By:** JONATHON CHRISTIAN BURNS
 **On Behalf Of:** CHARLES C JOHNSON, GOT NEWS, LLC

☐ **Corporation Served**

Document ID - 15-SMOS-534; Served To - GAWKER MEDIA LLC; Server - ; Served Date - 24-JUN-15; Served Time - 00:00:00; Service Type - Special Process Server; Reason Description - Served

**06/23/2015**  ☐ **Summ Issd- Circ Pers Serv O/S**

Document ID: 15-SMOS-536, for HOWARD, GREG. Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

☐ **Summ Issd- Circ Pers Serv O/S**

Document ID: 15-SMOS-535, for TROTTER, J.K.. Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

☐ **Summ Issd- Circ Pers Serv O/S**

Document ID: 15-SMOS-534, for GAWKER MEDIA LLC. Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**06/19/2015**  ☐ **Filing Info Sheet eFiling**

 **Filed By:** JONATHON CHRISTIAN BURNS

☐ **Pet Filed in Circuit Ct**

Plaintiff's Petition for Damages.
 **On Behalf Of:** CHARLES C JOHNSON, GOT NEWS, LLC

☐ **Judge Assigned**

DIV 15

Case.net Version 5.13.7.1                    Return to Top of Page                    Released 06/24/2015

**15SL-CC02099**

IN THE 21ST CIRCUIT COURT FOR ST. LOUIS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| CHARLES C. JOHNSON, an individual, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| GOT NEWS, LLC. | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | Division: |
| GAWKER MEDIA LLC | ) | |
| | ) | |
| Serve:  Gawker Media LLC | ) | |
|     210 Elizabeth Street | ) | |
|     4th Floor | ) | |
|     New York, New York 10012 | ) | |
| | ) | |
| J.K. TROTTER, in his individual capacity | ) | |
| | ) | |
| Serve:  Gawker Media | ) | **JURY TRIAL DEMANDED** |
|     114 5th Avenue | ) | |
|     New York, New York 10011 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| GREG HOWARD, in his individual capacity | ) | |
| | ) | |
| Serve:  Gawker Media | ) | |
|     114 5th Avenue | ) | |
|     New York, New York 10011 | ) | |
| | ) | |
|     Defendants. | ) | |

**PETITION FOR DEFAMATION, INJURIOUS FALSEHOOD, AND INVASION OF
PRIVACY (FALSE LIGHT), ALL UNDER THE COMMON LAW OF THE
SOVEREIGN STATE OF MISSOURI**

    COMES NOW Plaintiffs Charles C. Johnson and Got News LLC, by and through his

undersigned counsel, and for his petition against Defendants Gawker Media LLC, ("Gawker")

J.K. Trotter ("Trotter") and Greg Howard ("Howard") (collectively, "Defendants"), states as

follows:

## JURISDICTION AND VENUE

Because Plaintiffs have been injured in the State of Missouri, the matter is properly before a circuit court of Missouri. Venue is determined solely by statute. *State ex rel. Selimanovic v. Dierker*, 246 S.W.3d 931, 932 (Mo. banc 2008). Because the matter alleges torts, including defamation and invasion of privacy, venue is proper in this Court. V.A.M.S. § 508.010.8

## FACTUAL ALLEGATIONS

1.      Plaintiff Charles C. Johnson is a journalist and the president and owner of Got News, LLC, a media company which owns Gotnews.com, a news and commentary website.

2.      Defendant Gawker Media LLC, is a corporation organized and existing under the laws of the state of Delaware with its primary place of business located in New York, New York.

3.      Defendant J.K. Trotter, upon information and belief, is a resident of the state of New York.

4.      Defendant Greg Howard, upon information and belief, is a resident of the state of New York.

5.      At all times relevant to this petition, Defendants Trotter and Howard were employed as journalists by Defendant Gawker.

6.      Defendant Gawker owns a family of tightly-linked, internet-based media properties, with sub-brands that are each, individually and collectively marketed by Gawker.

7.      Among the media properties owned and marketed by Gawker are Deadspin.com and Gawker's flagship site, Gawker.com.

8.      Upon information and belief, the Gawker online media properties have in excess of sixty-four million (64,000,000) unique monthly readers in the United States.[1]

9.      Gawker's media properties, such as the properties mentioned above, contain a variety of content. For example, Deadspin.com is primarily a sports news and sports commentary website. The remaining properties may have different topical focuses, but each carries content primarily consisting of news and commentary.

10.     Gawker's sites offer readers, paid Gawker staff, and others an opportunity to create content on the individual web pages carrying stand-alone writings of a particular subject matter.

11.     The stand-alone writings are *consciously* and *deliberately* **initiated** by journalists such as Defendants Trotter and Howard.

12.     The only restrictions on the content created by the readers, is that readers cannot initiate the stand-alone writings, their content is placed on the webpage - first come, first serve - beneath the portion of the writing begun by the initiator, and their content creation is subject to being kept under a removable veil until "approval" by the initiator of the stand-alone writing.

13.     Readers can, at their own option, lift the veil and view the content created by non-initiating content creators, regardless of whether or not the stand-alone writing's initiator approves or disapproves of the content.

14.     In order to create content, a non-initiating content creator must create a content creator profile titled under their real name or under a pseudonym.

15.     It is very common for non-initiating content creators to create anonymous profiles, or even multiple anonymous profiles.

---

[1] http://advertising.gawker.com/about/ last accessed June 17, 2015.

3

16.     It is very common for initiators of writings (such as Defendants Howard and Trotter) to create content **amongst other non-initiating content creators**, and to directly *respond-to* and *collaborate* with non-initiating content creators, *instigate* and *solicit* responses from non-initiating content creators, and *adopt the conclusions* of or otherwise *advertise* or *approve* of the content of non-initiating content creators as signified through text content or by hyperlinking[2] to additional locations on the same webpage or the webpages of other stand-alone writings.

17.     On or about the morning of December 9, 2014, Defendant Trotter composed, published, and initiated, a stand-alone writing entitled, "What Is Chuck Johnson, and Why? The Web's Worst Journalist, Explained," (referred to hereafter as "Trotter First").[3]

18.     In Trotter First, Defendant Trotter defamed, cast in a false light, and injured Plaintiffs by proceeding to attempt to show how Plaintiff Johnson was the "web's worst journalist," by juxtaposing Plaintiff Johnson's journalistic professionalism alongside screenshots (*provided with no accompanying context*) of defamatory, false, and injurious Twitter postings ("tweets") made by various persons, each of which openly requested that Twitter, Inc. staff permanently ban Plaintiffs from posting on twitter.com, and which defamed Plaintiffs by alleging, inter alia, that Plaintiffs were "stalking," "[h]arass[ing]," and otherwise "endanger[ing]," other individuals.

19.     In Trotter First, Defendant Trotter defamed, cast in a false light, and injured Plaintiffs by stating that Johnson drew attention to himself as a result of his **flawed reporting** in the Senate Republican Primary race in Mississippi. ("he's drawn attention for his (flawed)

---

[2] A **hyperlink** is "an electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or a different document." http://www.merriam-webster.com/dictionary/hyperlink , last accessed June 17, 2015.

[3] http://gawker.com/what-is-chuck-johnson-and-why-the-web-s-worst-journal-1666834902 last accessed, June 17, 2015.

reporting in the Senate Republican primary race in Mississippi"). As a further proof of the allegation of "flawed" reporting, Trotter linked to another news article, which itself drew no conclusion and offered no proof of error in Johnson's reporting in the Senate Republican Primary race in Mississippi.

20.    In Trotter First, Defendant Trotter defamed, cast in a false light, and injured Plaintiffs by stating that Johnson is, "well-known for publishing stories that fall apart under the slightest scrutiny. The list of Johnson stories that have been proven wrong is long, but his greatest hits include: … [e]rroneously reporting that former Newark Mayor Cory Booker didn't actually reside in Newark[4] … Contributing reporting to the Daily Caller's infamous story about New Jersey Senator Bob Menendez allegedly soliciting prostitutes in the Dominican Republic. The Story turned out to be a complete fabrication,[5] and may have even been planted by the Cuban government."

21.    In Trotter First, Defendant Trotter defamed, cast in a false light, and injured Plaintiffs by paraphrasing a quote by Johnson, misleadingly stating that Johnson really meant that the deceased Michael Brown, Jr., who was killed by Ferguson, Missouri police officer Darren Wilson, "**deserved to die**" *because* he was African American.[6] Trotter would go on to call this "racist."

---

[4] Defendant Trotter offered as proof, a link to a "Buzz Feed News" article which itself drew no conclusions and simply reported the perspectives of competing viewpoints. See Ruby Cramer, "Cory Booker: Yes, I Live in Newark," Buzz Feed News, October 14, 2013, http://www.buzzfeed.com/rubycramer/cory-booker-yes-i-live-in-newark#.dyPmMdGDX last accessed June 17, 2015.

[5] Here again, as supposed proof, Trotter inserted a link to an ABC News online article which simply reported on the controversy surrounding Senator Menendez and proffered no conclusions one way or another. See Rhonda Schwartz, Brian Ross and Ned Berkowitz, "The Menendez Prostitution 'Scandal': How It Happened." ABC News, March 6, 2013, http://abcnews.go.com/Blotter/robert-menendez-prostitution-scandal-happened/story?id=18664472 last accessed June 17, 2015.

[6] The full paragraph from Trotter: "Johnson likes to publish articles, for example, insinuating that victims of police violence - particularly black victims - pretty much had it coming. Earlier this year, he collected screenshots of murdered teenager Michael Brown's Instagram account. 'Brown's Instagram account also

5

22.    In Trotter First, a number of anonymous, non-initiating content creators defamed, falsely portrayed, and injured Plaintiffs.

23.    Shortly after the initial section of Trotter First was published on gawker.com, several of such anonymous content creators published defamatory content on Trotter First.

24.    One such anonymous content creator, "*Cmcalumna,*" claimed to have attended college with Johnson.

25.    *Cmcalumna* published false information about Johnson on Trotter First, cast him in a false light, and injured Johnson by stating as a matter of fact that Johnson publicly defecated in either the hallway or elevator of his dormitory in college.

26.    Defendant Trotter incited and solicited additional false, injurious and defamatory comments from *Cmcalumna* as well as other content creators on Trotter First.

27.    Some anonymous content creators **begged** Defendant Trotter to write an article about the defamatory matters discussed by *Cmcalumna*, but Trotter informed the individual that Defendant Howard had already written, and initiated/published, on or about the afternoon of December 9, 2014, a stand-alone writing on deadspin.com, entitled, "Wait, Did Clowntroll Blogger Chuck Johnson Shit On The Floor One Time?" (hereafter, "Howard First").[7]

28.    Prior to Defendant Howard publishing Howard First, Plaintiff Johnson emailed Defendant Howard and categorically denied that incident that was the basis for the article's title ever occurred.

29.    In Howard First, Defendant Howard also created content amongst other non-initiating content-creators, soliciting information from them as well as adopting and advertising

---

shows a violent streak that may help explain what led to a violent confrontation with Police [sic] officer Darren Wilson,' Johnson wrote. In other words, Brown deserved to die."

[7] http://theconcourse.deadspin.com/wait-did-clowntroll-blogger-chuck-johnson-shit-on-the-1668919746 last accessed, June 17, 2015.

6

defamatory content published by *Cmcalumna* on the Trotter First website, encouraging other readers and content creators to view the defamatory statements by hyperlinking to *Cmcalumna's* published content. ("I'll tell you what. There is some good-ass kinja to be had re: Chuck shitting on the floor one time over at Gawker [hyperlink inserted into the text]").

30.     "Kinja" refers to Gawker's proprietary social-media, media content aggregating tool that readers, content creators and others use to collect and view content created on various Gawker media property websites.

31.     The phrase "good-ass kinja" refers to high quality content that readers, content creators, and others would be advised to view.

32.     Stating that particular content is "good-ass kinja," as well as instantly providing the link to said content, serves as express endorsement of the linked content, and Defendant Howard intended to direct as many readers as possible to view the defamatory content.

33.     By adopting, endorsing, advertising, responding to, interacting with, and directing additional content-creators, readers, and others to such defamatory, false, misleading, and injurious content created by a non-initiating content creator, Defendants Howard and Gawker formally adopted and are liable for, all of *Cmcalumna's* content published on Trotter First and Howard First.

34.     Later in the day on or about December 9, 2014, after Defendant Howard had published content directing viewers to *Cmcalumna's* defamatory, false, and injurious content, *Cmcalumna* published additional content as a direct response to Defendant Howard's publication (i.e., "There is some good-ass kinja to be had…").

35.     Defendant Howard would have been uniquely and particularly made aware of *Cmcalumna's* publication on the writing Howard had initiated.

7

36.     Plaintiff Johnson repeatedly requested that Defendnant Howard publically retract his defamatory statements, but Defendant Johnson refused.

37.     Specifically, *Cmcalumna* stated: "I think you made my year by writing an entire article based on my comment. I'd give anything to have some proof, but I wasn't there when it occurred … I hope him pooping in stark [the name of the alleged dormitory hall] follows him forever, just goes to show you how important it is to use a bathroom (and not be an asshole your entire life)."

38.     On or about December 15, 2014, Trotter wrote, published, and initiated a writing entitled, "Which of These Disgusting Chuck Johnson Rumors are True?" (hereafter, "Trotter Second").[8]

39.     In Trotter Second, in which Defendant Trotter describes the initiated writing as a "RUMORMONGER[ING]"[9] published writing, Trotter defamed, misleadingly and falsely portrayed, and injured Plaintiff Johnson by heavily quoting from *Cmcalumna's* false and defamatory content published in Trotter First, wherein *Cmcalumna* stated that she knew from either personal knowledge or from other certain, undisclosed evidence, that Johnson defecated in public.

40.     In Trotter Second, Defendant Trotter presented disgusting rumors which were not items of public concern prior to Defendants collective creation, collaboration, publication and incitation.

41.     After instrumentally generating minor interest at least as to the rumor of public defecation, Defendant Trotter concocted a false, misleading, pseudo-journalistic device to make

[8] http://gawker.com/which-of-these-disgusting-chuck-johnson-rumors-are-true-1669433099 last accessed June 17, 2015.
[9] Rumermonger: a person who spreads rumors. http://www.merriam-webster.com/dictionary/rumormonger last accessed June 17, 2015.

8

it appear to a casual viewer that he was merely reporting on a pre-existing matter of public concern. ("You may have read The New York Times' profile of Charles C. Johnson, the worst journalist on the internet. You also may have seen several very elaborate, very unbelievable, and very gross rumors about Johnson's past misdeeds floating around Twitter and Facebook. So maybe you're wondering: Which of those rumors are real?").

42.     In Trotter Second, Defenant Trotter reported that Defendant Howard had previously written about allegations of public defecation as against Johnson.

43.     Discussing a rumor ("Rumor 1: Johnson shit on the floor in college"), Defendant Trotter then reported that *two* of Johnson's college classmates, writing anonymously on Gawker,[10] had stated as a matter of fact that Johnson had defecated publicly at college. Trotter then purported to quote from, and hyperlinked to, various publications on Trotter First by two anonymous, non-initiating content-creators: *Cmcalumna* and *ChekhovsGum(ItsGonnaPop!)*.

44.     However, Defendant Trotter acknowledged that *ChekhovsGum(ItsGonnaPop!)* did not make such a statement about public defecation actually occurring. Rather, *ChekhovsGum(ItsGonnaPop!)* stated that while *some* person did in fact defecate in the dormitory, several years ago, it was not Johnson, and that any attribution to Johnson was out of extreme spite.

45.     Thus, as evidenced by the writing in Trotter Second, Defendant Trotter's **only basis** upon which to base his reporting were the publications of a *single, anonymous content creator (Cmcalumna), made on an article Trotter himself had initiated and published.*

---

[10] Trotter describes them as being classmates of Johnson, but does not describe the basis of his knowledge that they were, in fact, classmates of Johnson. Trotter also describes them as having used "burner" Gawker content creator profiles. A "burner" profile is slang for an anonymously created non-initiating content-creator account.

9

46.     The manner in which Defendant Trotter wrote the initiating portion of the writing was designed to give the audience the impression that Defendants Trotter and Howard were privy to special and hidden information, and this created an atmosphere in which the rumors could be perceived as being more true than false, even though Trotter and Howard had serious reason to believe they were false.

47.     For example, in Trotter Second, Defendant Trotter also **failed to report** that *Cmcalumna* had, subsequent to stating that it was "an undisputed fact" that Johnson had publicly defecated, recanted that statement and other similar statements, directly to Greg Howard.

48.     Thus, any reader would be left with the impression that Johnson may have defecated publicly, even though Defendant Trotter himself had reason to know that this was not the case.

49.     In Trotter Second, Defendant Trotter also reported upon the investigation he and Greg Howard had conducted into a "tip" that Johnson had "fucked a sheep."

50.     Defendant Trotter wrote that his source had told him that "Chuck had a 2002 bestiality charge expunged from his record due to his being a minor, 14 at the time."

51.     Similar to the previous rumor, Defendant Trotter did not divulge any information about his source and the basis of knowledge.

52.     Defendant Trotter continues on to describe his attempt to verify the allegations made in the "tip," and also describes an additional tipster who called Defendant Howard on the telephone and relayed a graphic allegation of Johnson having sex with a sheep, and Trotter recounts the allegation at length with enough detail to seemingly lend credence to the allegation. ("[Johnson] was spotted attempting to copulate with his wool sheep. The neighbor took pics with a telephoto lens, which, since the cops didn't catch him mid-act, were used as the basis for his

conviction. He was pants-down, pinning the sheep against the fence … [Johnson] got it
expunged in 2007 saying he was just a kid experimenting").

53.     Defendant Trotter also recounted that he and Defendant Howard had contacted
the San Bernardino County district attorney's office seeking Johnson's juvenile records related to
the alleged charge of bestiality, and that a representative at the juvenile division there said that
the office could not divulge information pertaining to individuals arrested and charged as
juveniles, "as Johnson allegedly was."

54.     Important to note, Plaintiffs have come under intense, hateful criticism for having
sought the juvenile records of Michael Brown, Jr. Plaintiffs currently have an action pending
before the Missouri Supreme Court regarding access to those records.

55.     Trotter Second is simply a play-by-play account of reporting on largely self-
created or incited rumors on matters which at no point were a matter of public concern.

56.     The Trotter Second content described above is false, misleading, injurious, and
intrinsically malicious and defamatory.

57.     Upon publication of the initiating segment of Trotter Second, Defendant Howard
published a statement using his Twitter account (@greghoward88) to advertise, endorse, and
direct viewer traffic to Trotter Second. ("torn. i kinda feel like sheepfucking is something you
grow into. on the other hand, @chuckcjohnson is a prodigy. [link to Trotter Second as well as
screenshot of the article]"

58.     Defendant Howard's @greghoward88 Twitter account reaches nearly thirteen
thousand (13,000) individual followers nationally, including numerous followers throughout
Missouri.

59.     Defendant Gawker's @gawker Twitter account is followed by and reaches in excess of five hundred and thirty-eight thousand (538,000) individuals.

60.     On December 9, 2015, @gawker published a "tweet" advertising Trotter Second.

61.     On December 15, 2015, @gawker published a "tweet" advertising Trotter One.

### Counts I and II: Defamation and Injurious Falsehood
(Against Defendants Gawker and Trotter)

62.     Plaintiff restates and incorporates by reference, as if fully set forth herein, all prior allegations of this Petition.

63.     This claim arose in St. Louis County, Missouri.

64.     On or about December 9, 2014 and again on December 15, 2014, Defendants Trotter and Gawker composed and published two internet news articles including statements about Plaintiff's person and Plaintiff's business.

65.     Defendant J.K. Trotter was at fault in publishing the articles described in paragraph 64 and knew that the statements were libelous when published.

66.     The articles described in paragraph 64 were defamatory in that they asserted - through false statements- that Plaintiff Charles C. Johnson is an unskilled and incompetent journalist and also that during his college life he was involved in a number of unsavory incidents. Specifically, the statements included the following direct quotations:

a.      From the December 9, 2014 article titled "What is Chuck Johnson, and Why? The Web's Worst Journalist, Explained"

i.      "The list of Johnson stories that have been proven wrong is long, but his greatest hits include:

1.      "Erroneously reporting that former Newark mayor Cory Booker didn't actually reside in Newark."

2.      "Contributing reporting to the Daily Caller's infamous story about New Jersey Senator Bob Menendez allegedly soliciting prostitutes in the Dominican Republic. The story turned out to be a complete fabrication, and may have been planted by the Cuban government."

ii.      Defendant Trotter states: "Earlier this year, [Johnson] collected screenshots of murdered teenager Michael Brown's Instagram account. (Quoting Johnson,) 'Brown's Instagram account also shows a violent streak that may help explain what led to a violent confrontation with Police officer Darren Wilson,' Johnson wrote. **In other words, Brown deserved to die.**" (emphasis added). This statement contains the induced allegation of fact that Plaintiff asserted Michael Brown deserved to die.

b.      From the December 15, 2014 article titled, "Which of These Disgusting Chuck Johnson Rumors are True?"

i.      In bold, "**Johnson shit on the floor in college.**"

ii.      Defendant Trotter's article then goes on to publish comments from Gawker readers who allege to be former classmates of Plaintiff:

1.      *"Hilariously, he graduated being best known for pooping on the (I think I'm remembering the floor right) 7th floor of Stark (a dorm). I'm sad this idiot is getting any attention at all, but I hope this guy becomes famous for the same reasons he was in college, his public pooping problems."*

2.      *I started two years after him, so I wasn't there since he did it as a freshman or sophomore. But the upperclassman talked about it*

regularly and ***it was an undisputed fact that he did it.*** *Multiple people talked about it in great detail [confirmed by another commenter] on the school's paper/website the cmcforum.com and I bet many instances of people talking about it can be seen in the comment archives from 2008-2011.*

iii.     In bold, "**Johnson fucked a sheep.**"

iv.     Defendant Trotter again published comments posted to Gawker from individuals who claim to know Plaintiff:

1.     *Chuck had a 2002 bestiality charge expunged from his record due to his being a minor, 14 at the time.*

2.     *A friend is in the San Bernardino County Sheriff Dept. As I heard it, Chuck was about 14, had gone to stay with his cousins [for] a few weeks... He went for a weekend with one to a friend of the cousin's who owned a ranch near Wrightwood.*

***The father of the friend got suspicious when they caught him coming back inside very late the first night. The next night, he apparently wandered back out & got the cops called on him by a neighbor when he was spotted attempting to copulate with his wool sheep. The neighbor took pics with a telephoto lens, which, since the cops didn't catch him mid-act, were used as the basis for his conviction. He was pants-down, pinning the sheep against the fence.***

*The story is still famous in circles of San Bernardino County law enforcement, apparently. He got it expunged in 2007, saying he was just a*

14

*kid experimenting, and he didn't want it to reflect badly when he was in college working for collegiate newspapers. My friend won't give interviews, because he'd get in trouble for leaking expunged records, but it definitely happened, and word is that the files & pics still exist. Hope that helps!!*

67. The above statements published by Defendant Trotter are statements of fact that are objectively falsifiable.

68. The above statements published by Defendant Trotter are patently false.

69. The statements described in 64 through 66 (and paragraphs 17-27 and 38-54, *supra*) were published online and circulated around the entire United States. The statements were intentionally made available to and read by the general public in the state of Missouri.

70. By his online publication of the statements described in paragraphs 66 through 64 (and paragraphs 17-27 and 38-54, *supra*), Defendant Trotter intentionally targeted the state of Missouri and knew or should have known that residents of the state of Missouri would read the statements.

71. The statements tend to deprive plaintiff of the benefit of public confidence and social and business associations, and the defendant published the statements knowing they were defamatory.

72. Defendant Trotter intended to harm Plaintiff's interests by publishing the statements described in paragraphs 64 through 66 (and paragraphs 17-27 and 38-54, *supra*), or Defendant Trotter recognized or should have recognized that such harm was likely.

73. As a direct result of the publication of the statements described in paragraphs 64 through 66 (and paragraphs 17-27 and 38-54, *supra*), Plaintiff has been damaged in reputation,

15

Plaintiff's business has been placed in jeopardy, and Plaintiff has suffered emotional injury, all to his damage in a sum to exceed $2,000,000.

74.     As a direct result of the publication of the statements described in paragraphs 64 through 66 (and paragraphs 17-27 and 38-54, *supra*), Plaintiffs Charles C. Johnson and Got News, LLC have been damaged in reputation and have suffered pecuniary damages of lost business and lost investments due to damaged business reputation, as well as the need for Plaintiff to file this lawsuit to defend his good name and the related costs from attorney's fees, in an amount exceeding $2,000,000.

75.     Defendant Trotter's conduct in publishing the statements described in paragraphs 64 through 66 (and paragraphs 17-27 and 38-54, *supra*) was done with knowledge that the statements were false or with reckless disregard for whether they were true or false at a time when defendant had serious doubt as to whether they were true, thereby warranting an award of punitive damages in a sum of not less than $20,000,000.

76.     Defendant Trotter was an agent, servant, and employee of Defendant Gawker, and as at all such times acting within the scope and course of his agency and employment; and/or his actions were expressly authorized by Defendant Gawker; and/or his actions were ratified by Defendant Gawker, thus making Defendant Gawker liable for said actions under the doctrine of *respondeat superior.*

WHEREFORE, plaintiff prays judgment against Defendants Trotter and Gawker on Counts I and II of this Petition and for such damages as are fair and reasonable, together with interest and costs, and such other and further relief, as the court shall deem proper.

### Counts III and IV: Defamation and Injurious Falsehood
(Against Defendants Gawker and Howard)

16

77.     Plaintiff restates and incorporates by reference, as if fully set forth herein, all prior allegations of this Petition.

78.     This claim arose in St. Louis County, Missouri.

79.     On or about December 9, 2014, Defendant Howard composed and published an Internet news article including statements about Plaintiff's person and Plaintiff's business.

80.     Defendant Greg Howard was at fault in publishing the articles described in paragraph 79 and knew that the statements were libelous when published.

81.     The article described in paragraph 79 as defamatory in that it asserted -through false statements- that Plaintiff Charles C. Johnson is an unskilled and incompetent journalist and also that during his college life he was involved in a number of unsavory incidents. Specifically, the statements included the following direct quotations:

    a.      From the December 9, 2014 article titled "Wait, Did Clowntroll Blogger Chuck Johnson Shit On The Floor One Time?"

        i.      "[Johnson] gets things wrong *a lot*."

        ii.     Defendant Howard states: "Sure enough, on the Facebook post, there are cryptic comments from friends and former classmates about some mysterious floor-shitting incident"

    b.      In the Comments section, titled "Greg Howard's Discussions," on the article's webpage, Defendant Howard posts to himself, "Tell you what. There is some good-ass kinja to be had re: Chuck shitting on the floor one time over at Gawker."

        i.      In the above-mentioned comment posted by Defendant Howard, the words "good-ass kinja" are hyperlinked to a comment by *Cmcalumna* on a

17

Gawker article titled, "What is Chuck Johnson, and Why? The Web's Worst Journalist, Explained."

    ii.   *Cmcalumna's* comment, posted 12/09/14 at 1:05 PM, reads as follows:

    1.   *I started two years after him, so I wasn't there since he did it as a freshman or sophomore. But the upperclassman talked about it regularly and it was an undisputed fact that he did it. Multiple people talked about it in great detail [confirmed by another commenter] on the school's paper/website the cmcforum.com and I bet many instances of people talking about it can be seen in the comment archives from 2008-2011.*

82.    The above statements published by Defendant Howard are statements of fact that are objectively falsifiable.

83.    The above statements published by Defendant Howard are patently false.

84.    The statements described in paragraphs 79 through 81 (and paragraphs 27-37, *supra*) were published online and circulated around the entire United States. The statements were intentionally made available to and read by the general public in the state of Missouri.

85.    By his publication of the statements described in paragraphs 79 through 81 (and paragraphs 27-37, *supra*) online, Defendant Howard intentionally targeted the state of Missouri and knew or should have known that residents of the state of Missouri would read the statements.

86.    The statements tend to deprive plaintiff of the benefit of public confidence and social and business associations, and the defendant published the statements knowing they were defamatory.

87.     Defendant Howard intended to harm Plaintiff's interests by publishing the statements described in paragraphs 79 through 81 (and paragraphs 27-37, *supra*), or Defendant Howard recognized or should have recognized that such harm was likely.

88.     Defendant Howard was an agent, servant, and employee of Defendant Gawker, and as at all such times acting within the scope and course of his agency and employment; and/or his actions were expressly authorized by Defendant Gawker; and/or his actions were ratified by Defendant Gawker, thus making Defendant Gawker liable for said actions under the doctrine of *respondeat superior.*

89.     As a direct result of the publication of the statements described in 79 through 81 (and paragraphs 27-37, *supra*), Plaintiff has been damaged in reputation, Plaintiff's business has been placed in jeopardy, and Plaintiff has suffered emotional injury, all to his damage in a sum to exceed $2,000,000.

90.     As a direct result of the publication of the statements described in paragraphs 79 through 81 (and paragraphs 27-37, *supra*), Plaintiffs Charles C. Johnson and Got News, LLC have been damaged in reputation and have suffered pecuniary damages of lost business and lost investments due to damaged business reputation, as well as the need for Plaintiff to file this lawsuit to defend his good name and the related costs from attorney's fees, in an amount exceeding $2,000,000.

91.     Defendant Howard's conduct in publishing the statements described in paragraphs 79 through 81 (and paragraphs 27-37, *supra*) was done with knowledge that the statements were false or with reckless disregard for whether they were true or false at a time when defendant had serious doubt as to whether they were true, thereby warranting an award of punitive damages in a sum of not less than $20,000,000.

WHEREFORE, plaintiff prays judgment against defendants in Count III and IV of his Petition and for such damages as are fair and reasonable, together with interest and costs, and such other and further relief, as the court shall deem proper.

**Counts V: Invasion of Privacy - False Light**
**(Against All Defendants)**

92.     Plaintiff restates and incorporates by reference, as if fully set forth herein, all prior allegations of this Petition.

93.     Defendants have given publicity to <u>fictional matters</u> not of public concern, and have falsely and publicly attributed these fictional and outrageous acts to Plaintiffs in an effort to harm Plaintiffs.

94.     Defendants have twisted Plaintiff's words and the context in which they were made to such an extraordinary degree as to given them a highly offensive meaning not originally present, all in an effort to harm Plaintiffs.

95.     Defendants have presented Plaintiffs to the public in a false light, and either knew precisely that they were misrepresenting Plaintiffs to the public, or Defendants acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiffs would be placed.

96.     As a direct result of the publication of the statements described in Counts I-IV, Plaintiff has been damaged in reputation, Plaintiff's business has been placed in jeopardy, and Plaintiff has suffered emotional injury, all to his damage in a sum to exceed $2,000,000.

97.     As a direct result of the publication of the statements described in Counts I-IV, Plaintiffs Charles C. Johnson and Got News, LLC have been damaged in reputation and have suffered pecuniary damages of lost business and lost business investments, due to damaged

business reputation, as well as the need for Plaintiff to file this lawsuit to defend his good name and the related costs from attorney's fees, in an amount exceeding $2,000,000.

98.      Defendants' conduct in publishing the statements described in Counts I-IV was done with knowledge that the statements were false or with reckless disregard for whether they were true or false at a time when defendant had serious doubt as to whether they were true, thereby warranting an award of punitive damages in a sum of not less than $20,000,000.

WHEREFORE, plaintiff prays judgment against Defendants on Count V of this Petition and for such damages as are fair and reasonable, together with interest and costs, and such other and further relief as the court shall deem proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff requests a trial by jury, in the Circuit Court for St. Louis County, Missouri, on all issues in this case which are so triable.

Respectfully submitted,

**THE BURNS LAW FIRM** LLC

  /s/ John C. Burns
John C. Burns MO 66462
David Nowakowski MO 66481
1717 Park Avenue
St. Louis, MO 63104
john@burns-firm.com
Telephone: (314) 932-2356
Facsimile: (314) 932-2171



## IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JOHN D WARNER JR | Case Number:  15SL-CC02099 |
| Plaintiff/Petitioner:<br>CHARLES C JOHNSON<br><br><br>                                                            vs. | Plaintiff's/Petitioner's Attorney/Address:<br>JONATHON CHRISTIAN BURNS<br>THE BURNS LAW FIRM, LLC<br>1717 Park Avenue<br>Saint Louis, MO  63104 |
| Defendant/Respondent:<br>GAWKER MEDIA LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING |
| Nature of Suit:<br>CC Other Tort | 105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105                             (Date File Stamp) |

### Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:   GAWKER MEDIA LLC
                                              Alias:

**GAWKER MEDIA LLC**
**210 ELIZABETH STREET**
**4TH FLOOR**
**NEW YORK, NY  10012**

*COURT SEAL OF*

*ST. LOUIS COUNTY*

   You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
   SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

23-JUN-2015
Date
Further Information:
KAM

_____
                                        Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by:  (check one)
   ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
   ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
   ☐ other (describe) _____
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____          _____
      Printed Name of Sheriff or Server                   Signature of Sheriff or Server

                   **Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
                   I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
                                              ☐ the judge of the court of which affiant is an officer.
*(Seal)*                                    ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
                                              ☐ authorized to administer oaths. (use for court-appointed server)

                                                            _____
                                                                  Signature and Title

| Service Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ (_____ miles @ $_____ per mile) |
| **Total** | $_____ |

**See the following page for directions to clerk and to officer making return on service of summons.**

## Directions to Clerk

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54.  The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered.  The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service.  The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy.  The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy.  If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons.  This form is not for use in attachment actions.  (See Rule 54.06, 54.07 and 54.14)

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States.  If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

## THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.  A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.  Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits.  Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

OSCA (7-04) SM60 *For Court Use Only:* **Document ID# 15-SMOS-534**      3      **(15SL-CC02099)**      Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms.  You should ask your lawyer for further information.

CCADM73

OSCA (7-04) SM60 *For Court Use Only:* **Document ID# 15-SMOS-534**      4      **(15SL-CC02099)**                    Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo



## IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JOHN D WARNER JR | Case Number:  15SL-CC02099 |
| Plaintiff/Petitioner:<br>CHARLES C JOHNSON | Plaintiff's/Petitioner's Attorney/Address:<br>JONATHON CHRISTIAN BURNS<br>THE BURNS LAW FIRM, LLC<br>1717 Park Avenue<br>Saint Louis, MO  63104 |
|              vs. | |
| Defendant/Respondent:<br>GAWKER MEDIA LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  **J.K. TROTTER**
               **Alias:**

**GAWKER MEDIA**
**114 5TH AVENUE**
**NEW YORK, NY  10011**

*COURT SEAL OF*

*ST. LOUIS COUNTY*

        You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
        **SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.**

**23-JUN-2015**
Date
**Further Information:**
**KAM**

_____ Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by:  (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
    ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
    ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
    ☐ other (describe) _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____        _____
   Printed Name of Sheriff or Server            Signature of Sheriff or Server

      **Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
      I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
                      ☐ the judge of the court of which affiant is an officer.
*(Seal)*                   ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
                      ☐ authorized to administer oaths.  (use for court-appointed server)

_____
                                          Signature and Title

| **Service Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ ( _____ miles @ $ _____ per mile) |
| Total | $_____ |

**See the following page for directions to clerk and to officer making return on service of summons.**

## Directions to Clerk

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54.  The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered.  The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service.  The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy.  The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy.  If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons.  This form is not for use in attachment actions.  (See Rule 54.06, 54.07 and 54.14)

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States.  If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

## THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.  A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.  Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits.  Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

OSCA (7-04) SM60 *For Court Use Only:* **Document ID#  15-SMOS-535**      3      **(15SL-CC02099)**                    Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.   The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.   The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms.  You should ask your lawyer for further information.

CCADM73

OSCA (7-04) SM60 *For Court Use Only:* **Document ID# 15-SMOS-535**     4     **(15SL-CC02099)**          Rules 54.06, 54.07, 54.14, 54.20,
506.500, 506.510 RSMo



## IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>JOHN D WARNER JR | Case Number:  15SL-CC02099 |
|---|---|
| Plaintiff/Petitioner:<br>CHARLES C JOHNSON<br><br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>JONATHON CHRISTIAN BURNS<br>THE BURNS LAW FIRM, LLC<br>1717 Park Avenue<br>Saint Louis, MO  63104 |
| Defendant/Respondent:<br>GAWKER MEDIA LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  GREG HOWARD
           Alias:

GAWKER MEDIA
114 5TH AVENUE
NEW YORK, NY  10011

*COURT SEAL OF*

*ST. LOUIS COUNTY*

        You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
        SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

23-JUN-2015
  **Date**
  **Further Information:**
  KAM

_____
             Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by:  (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
    ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
    ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
    ☐ other (describe) _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____      _____
  Printed Name of Sheriff or Server          Signature of Sheriff or Server

        **Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
        I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
                  ☐ the judge of the court of which affiant is an officer.
                  ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
*(Seal)*                 ☐ authorized to administer oaths. (use for court-appointed server)

                                _____
                                     Signature and Title

| Service Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ ( _____ miles @ $ _____ per mile) |
| Total | $_____ |

        **See the following page for directions to clerk and to officer making return on service of summons.**

### Directions to Clerk

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54.  The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered.  The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service.  The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy.  The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy.  If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons.  This form is not for use in attachment actions.  (See Rule 54.06, 54.07 and 54.14)

### Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States.  If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

**THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**<u>Purpose of Notice</u>**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.  A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**<u>Your Rights and Obligations in Court Are Not Affected By This Notice</u>**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.  Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**<u>Alternative Dispute Resolution Procedures</u>**

There are several procedures designed to help parties settle lawsuits.  Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) <u>Advisory Arbitration:</u>** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) <u>Mediation:</u>** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

OSCA (7-04) SM60 *For Court Use Only:* **Document ID# 15-SMOS-536**     4     **(15SL-CC02099)**                                     Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo



## IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JOHN D WARNER JR | Case Number:  15SL-CC02099 |
| Plaintiff/Petitioner:<br>CHARLES C JOHNSON | Plaintiff's/Petitioner's Attorney/Address:<br>JONATHON CHRISTIAN BURNS<br>THE BURNS LAW FIRM, LLC<br>1717 Park Avenue<br>Saint Louis, MO  63104 |
| vs. | |
| Defendant/Respondent:<br>GAWKER MEDIA LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING |
| Nature of Suit:<br>CC Other Tort | 105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| | (Date File Stamp) |

### Summons for Personal Service Outside the State of Missouri
#### (Except Attachment Action)

The State of Missouri to:  GAWKER MEDIA LLC
                  Alias:

GAWKER MEDIA LLC
210 ELIZABETH STREET
4TH FLOOR
NEW YORK, NY 10012

*COURT SEAL OF*

*ST. LOUIS COUNTY*

      You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
      SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

23-JUN-2015
Date
Further Information:
KAM

                                         _Clerk_

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _PROCESS SERVER_ of _NEW YORK_ County, _NEW YORK_ (state).
3.  I have served the above summons by: (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
    ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
    ☒ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _KAVITHA REDDY_ (name) _Deputy General Counsel_ (title).
    ☐ other (describe)
Served at _210 Elizabeth Street, 4th Floor_ (address)
in _New York_ County, _NY 10012_ (state), on _6-24-15_ (date) at _3:40pm_ (time).

_DERICKA MARTIN  2008319_              _Signature of Sheriff or Server_
Printed Name of Sheriff or Server

Subscribed and Sworn To me before this _16_ (day) _June_ (month) _2015_ (year)
I am: (check one) ☐ the clerk of the court of which affiant is an officer.
                  ☐ the judge of the court of which affiant is an officer.
                  ☒ authorized to administer oaths in the state in which the affiant served the above summons.
                  (use for out-of-state officer)
                  ☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*                                       _Signature and Title_

JONATHAN RIEPS
NOTARY PUBLIC - STATE OF NEW YORK
NO. 01RI6403715
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES JULY 17, 2016

| Service Fees, if applicable | |
|---|---|
| Summons | $ |
| Non Est | $ |
| Mileage | $ _____ ( _____ miles @ $ ____ per mile) |
| Total | $ |

See the following page for directions to clerk and to officer making return on service of summons.

OSCA (7-04) SM60 *For Court Use Only: Document ID# 15-SMOS-534*    1    (15SL-CC02099)                         Rules 54.06, 54.07, 54.14, 54.20;<br>506.500, 506.510 RSMo



### IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JOHN D WARNER JR | Case Number:  15SL-CC02099 |
| Plaintiff/Petitioner:<br>CHARLES C JOHNSON | Plaintiff's/Petitioner's Attorney/Address:<br>JONATHON CHRISTIAN BURNS<br>THE BURNS LAW FIRM, LLC<br>1717 Park Avenue<br>Saint Louis, MO  63104 |
| vs. | |
| Defendant/Respondent:<br>GAWKER MEDIA LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Other Tort | |
| | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  GAWKER MEDIA LLC
　　　　　　　　　　　　Alias:

GAWKER MEDIA LLC
210 ELIZABETH STREET
4TH FLOOR
NEW YORK, NY  10012

COURT SEAL OF

ST. LOUIS COUNTY

　　　　You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
　　　　SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

23-JUN-2015
Date
Further Information:
KAM

_____
Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1.　I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.　My official title is _PROCESS SERVER_ of _NEW YORK_ County, _NEW YORK_ (state).
3.　I have served the above summons by: (check one)
　　☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
　　☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
　　　　_____, a person of the Defendant's/Respondent's family over the age of 15 years.
　　☑ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
　　　_KAVITHA REDDY_ (name) _Deputy General Counsel_ (title).
　　☐ other (describe)
Served at _210 Elizabeth Street, 4th Floor_ (address)
in _New York_ County, _NY 10012_ (state), on _6-24-15_ (date) at _9:40PM_ (time).

_DERICKA MARTIN  2008319_　　　　　　　_____
Printed Name of Sheriff or Server　　　　　　Signature of Sheriff or Server

Subscribed and Sworn To me before this _16_ (day) _June_ (month) _2015_ (year)

I am: (check one)　☐ the clerk of the court of which affiant is an officer.
(Seal)　　　　　　　☐ the judge of the court of which affiant is an officer.
　　　　　　　　　　☑ authorized to administer oaths in the state in which the affiant served the above summons.
　　　　　　　　　　　(use for out-of-state officer)
　　　　　　　　　　☐ authorized to administer oaths. (use for court-appointed server)
　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Signature and Title

JONATHAN　PIEPS
NOTARY PUBLIC - STATE OF NEW YORK
NO. 01PI6102742
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES MAY 17, 2016

| Service Fees, if applicable | | | |
|---|---|---|---|
| Summons | $ | | |
| Non Est | $ | | |
| Mileage | $ | _____ miles @ $ _____ per mile | |
| Total | $ | | |

See the following page for directions to clerk and to officer making return on service of summons.

OSCA (7-04) SM60 *For Court Use Only:* **Document ID# 15-SMOS-534**　　1　　(15SL-CC02099)　　　　　Rules 54.06, 54.07, 54.14, 54.20;
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　506.500, 506.510 RSMo

Electronically Filed - St Louis County - June 30, 2015 - 03 PM Fra

**DLS** **DEMOVSKY LAWYER SERVICE**
Premier Nationwide Document Retrieval and Process Service Company
800-443-1058

*IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI*

CHARLES C JOHNSON

      Plaintiff/Petitioner

vs.

**GAWKER MEDIA LLC**

      Defendant/Respondent

Case Number: 15SL-CC02099

**AFFIDAVIT OF SERVICE**

-------------------------------------------------------------------/

STATE OF NEW YORK   }
            S.S.
COUNTY OF NEW YORK}

      **DERICK A. MARTIN,** being duly sworn, deposes and says that he is over eighteen years of age, is employed by the attorney service, DLS, INC., and is not party to this action.

      That on the 24th day of June, 2015, at approximately the time of 3:40pm, deponent served two true copies of the **SUMMONS AND PETITION** upon **GAWKER MEDIA LLC** at 210 Elizabeth Street, 4th Floor, New York, NY 10012 by personally delivering and leaving the same with **KAVITHA REDDY,** who informed deponent that she holds the position of Deputy General Counsel with that company and is authorized by appointment to receive service at that address.

      **KAVITHA REDDY** is a black female, approximately 38 years of age, stands approximately 5 feet 6 inches tall, weighs approximately 185 pounds with black hair and brown eyes.

_____
**DERICK A. MARTIN, 2008319**

Sworn to before me this
26th day of June, 2015

JONATHAN    RIDER
NOTARY PUBLIC - STATE OF NEW YORK
NO. 01RI6103718
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES MAY 07, 2016

_____
NOTARY PUBLIC

D.L.S., Inc.
401 Broadway
Ste. 510
New York, NY 10013
212-925-1220
www.dlsnational.com