IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
(Eastern Division)

| | |
|---|---|
| CHARLES C. JOHNSON, *et. al* | : |
| | : Case No. 14:15-cv-01137 |
| Plaintiffs, | : |
| v. | : |
| | : |
| GAWKER MEDIA, LLC, *et. al*, | : |
| | : |
| Defendants. | : |
| | : |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

Plaintiffs, controversial journalist Charles Johnson and his website Got News, complain that Defendants criticized Johnson's reporting and poked fun at him. The Complaint is based entirely on opinions and cherry-picked text which, when put in context, is plainly not defamatory. None of the statements can support a claim. Rather, this case is a transparent attempt to punish embarrassing – but fully legal – reporting.

This retaliatory suit is meritless for any number of reasons. Initially, the case should be dismissed because the Court lacks personal jurisdiction over Defendants. Neither Plaintiffs nor Defendants have a relevant connection to Missouri; rather, the suit seems to have been brought here to try to avoid California's laws addressing retaliatory defamation suits. Alternatively, the case should be transferred to a state that does have jurisdiction. If not, the Complaint fails to state a claim for several reasons.[1] *First*, Plaintiffs are public figures and they fail to plausibly

---

[1] As set forth in the concurrently filed Special Motion to Strike, California law applies to this case. Defendants may therefore invoke California's anti-SLAPP statute, which provides special protection for lawsuits challenging speech. However, if the Court were to determine otherwise, the Complaint fails regardless of which state's law is applied so Defendants file this motion under Rule 12(b)(6) as well.

1

allege that Defendants published anything with actual malice. *Second*, the challenged statements are non-actionable opinion or are not defamatory – to the point where they expressly cast doubt on the truth of the "rumors" Plaintiffs complain about. *Third*, statements by readers to Gawker's websites are protected by 47 U.S.C. § 230, which bars suits against a website for comments posted by readers.

## STATEMENT OF FACTS

### I. PLAINTIFFS CHARLES JOHNSON AND GOT NEWS

Johnson is a highly controversial journalist and commentator, and his website Gotnews.com is the principal organ for his views.[2] Compl. ¶ 1. Johnson's work is frequently featured in publications like the *Wall Street Journal* and *Los Angeles Times*, and he has appeared as a guest on Fox News, CNN and numerous programs. Gotnews.com aims "to transform journalism" because "Johnson recognized that most published stories were only partially true, while other important stories were never told at all." *See About*, GotNews, http://gotnews.com/about.

Johnson has published many controversial stories attacking politicians like Senators Robert Menendez, for alleged sexual peccadillos, and Cory Booker. Johnson has also personally attacked other journalists, such as accusing a *New York Times* reporter of posing for *Playgirl*, Decl. of N. Siegel, Ex. 6, and publishing the home addresses of reporters, *id.*, Ex. 1. As a result, other media have sharply criticized him about both the accuracy of his reporting and his character. *The New York Times* described Johnson as a "less [than] edifying creation[]" of the internet who "has a knack for staking an outrageous, attacking position on a prominent news event, then pounding away until he is noticed." *Id.*, Ex. 23. Recently, he provoked an outcry by

---

[2] The three columns at issue, as well as the materials to which they hyperlink, may be considered for purposes of a motion to dismiss since they are deemed to have been incorporated by reference in the Complaint. *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 999 n. 4 (8th Cir. 2007).

2

identifying "Jackie," who was the subject of *Rolling Stone*'s erroneous rape story, but publishing a picture of the wrong woman in the process. *See, e.g.*, Compl. ¶ 20 nn. 4-5 (linking to *ABC News* and *Buzzfeed News* articles debunking Johnson stories); Siegel Decl., Ex. 24.

## II. THE COMPLAINT

Plaintiffs challenge a dozen statements from three articles published on the news and commentary websites Gawker.com and Deadspin.com, which for the convenience of the Court we have listed in a table, attached as Exhibit 1 hereto ("Ex. 1"). The statements fall into three categories: (1) statements that criticize Johnson's reporting; (2) those that humorously discuss rumors that he defecated on the floor in college and committed bestiality as a minor and suggest they should not be taken seriously; and (3) comments posted by readers. *Id.*

## ARGUMENT

### I. THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

This case has no meaningful connection to Missouri, and publishing articles on the internet does not confer jurisdiction here. The pertinent facts are that Gawker Media, LLC is a Delaware company, its principal place of business is New York, and its sole member is a Cayman Islands company. Dkt. 1-5 at ¶¶ 2, 3. Gawker has no offices, bank accounts or operations in Missouri, sells no paid subscriptions nor tangible products to Missouri, and has one employee who lives in Missouri but telecommutes to New York and had nothing to do with the articles at issue. Aug. 21, 2015 Decl. of C. O'Connor ¶¶ 3, 5. Defendants Trotter and Howard are Gawker writers and domiciliaries of New York. Decl. of J.K. Trotter ¶¶ 2, 3; Decl. of G. Howard ¶¶ 2, 3. Neither made any trips to Missouri or contacted anyone here in connection with the articles. Trotter Decl. ¶ 7; Howard Decl. ¶ 6. Plaintiff Johnson is a domiciliary of California and Got News LCC is a California company. *See* Dkt. 1 ¶¶ 1, 12.

3

### A. There Is No Specific Jurisdiction over the Defendants

To establish specific jurisdiction, a plaintiff must demonstrate that both (1) "a defendant's conduct was covered by the [Missouri] long-arm statute" and (2) "the exercise of jurisdiction comports with due process requirements." *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909 (8th Cir. 2012) (citation omitted). Plaintiffs can show neither.

First, Missouri's long-arm statute allows jurisdiction where the cause of action arises out of the defendant's "transaction of any business within this state" or the "commission of a tortious act within this state." Mo. Ann. Stat. § 506.500.1(1), (3). Recently, Judge Autrey addressed the statute in the context of publishing allegedly defamatory information on the internet. In *Johnson Chiropractic Ctr., LLC v. Clark*, 2014 WL 3818191, at *3 (E.D. Mo. Aug. 1, 2014), the Missouri assignee of a Wisconsin company sued a North Carolina resident for allegedly defamatory statements made in a video offered for sale on the company's website. The video was recorded at a seminar in Texas. *Id*. at *1. Judge Autrey held that the long-arm statute did not reach defendant's conduct merely because the defendant offered for sale "a [video] of the seminar on the internet." *Id*. at *3. That conclusion applies with even more force here, where no party is related to Missouri and the articles at issue were visible here as they are anywhere in the world.

Even if the Missouri statute applied, due process would not permit specific jurisdiction. That is proper "'only if . . . the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities.'" *Johnson v. Arden*, 614 F.3d 785, 795 (8th Cir. 2010) (citation omitted). The Eighth Circuit has developed five factors to consider when deciding whether specific jurisdiction is proper: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of Missouri in providing a forum for its residents; and (5) the

convenience or inconvenience to the parties." *Id.* at 794. The Circuit has applied these factors in two defamation cases that make clear no specific jurisdiction lies here.

*Steinbuch v. Cutler*, 518 F.3d 580 (8th Cir. 2008), addressed whether a book publisher with nationwide distribution was subject to specific jurisdiction in Arkansas. Some copies of the book were sold in Arkansas bookstores and the plaintiff lived in Arkansas when he filed suit. Nonetheless, the Court found no specific jurisdiction because "the cause of action appear[ed] to have no direct connection with the forum state." *Id.* at 586-87. The same is true here.

Subsequently, in *Johnson*, the Circuit addressed specific jurisdiction in the context of alleged defamation on the internet, and found none. In that case, Missouri plaintiffs sued a Colorado resident for publishing statements on her website. 614 F.3d at 788-89. The parties had previously transacted business, including shipping pets between Colorado and Missouri. *Id.* As the plaintiffs were Missouri residents, the Court identified two key factors to determine when a forum resident may bring suit as a result of internet activity by a foreign defendant.

The first is the extent to which the website is interactive, or whether it largely posts information and allows others to do the same (which is less likely to justify jurisdiction). *Id.* at 796 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). In this case Plaintiffs' claim does not arise out of any particular interactivity with Missourians at all. Rather, they complain about articles and reader comments that were merely posted for anyone in the world to see, which plainly cannot confer jurisdiction. *Id.* (describing similar features on another website as "land[ing] on the 'mere posting' end of the scale").

The second factor is the "*Calder* effects" test derived from *Calder v. Jones*, 465 U.S. 783 (1984). This test is met if the defendants' acts "were uniquely or expressly aimed at the forum state" and "caused harm, the brunt of which was suffered and which the defendant knew was

5

likely to be suffered in the forum state." *Johnson*, 614 F.3d at 796 (marks omitted). Gawker's articles were not aimed uniquely at Missouri. And as California residents, Plaintiffs can hardly contend that most of their harm was suffered in Missouri. *Steinbuch*, 518 F.3d at 586.

Other courts within this Circuit and beyond have declined to find specific jurisdiction based on allegedly defamatory statements posted on the internet, including in cases that presented far more of a connection to the forum state than do the facts here. *See, e.g.*, *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002) (no jurisdiction over a New York magazine for statements on its website about the forum plaintiff); *Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002) (no jurisdiction over a Connecticut newspaper for statements on its website about the forum plaintiff); *Minn. Pub. Radio v. Va. Beach Educ. Broad. Found.,* 519 F. Supp. 2d 970 (D. Minn. 2007) (no jurisdiction over a Virginia public radio station); *Bible & Gospel Trust v. Wyman*, 354 F. Supp. 2d 1025 (D. Minn. 2005) (no jurisdiction over the non-resident operator of a website); *Realuyo v. Villa Abrille*, 2003 WL 21537754 (S.D.N.Y. July 8, 2003) (no jurisdiction over a Philippine newspaper for statements on its website), *aff'd*, 93 F. App'x 297 (2d Cir. 2004). These cases also demonstrate the critical distinction between physically selling and delivering into the forum state thousands of physical goods, including a printed magazine, *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), and maintaining a website that is accessible anywhere but does not "actually facilitate any commerce between [the defendant] and Missouri residents" related to the lawsuit, *Viasystems, Inc., v. Ebm–Papst St. Georgen GmbH & Co. KG*, 2010 WL 2402834, at *6 (E.D. Mo. June 11, 2000), *aff'd*, 646 F.3d 589 (8th Cir. 2011).

### B. There Is No General Jurisdiction over Any Defendant

The Supreme Court has recently clarified the law with respect to general jurisdiction, so that it is proper only when a defendant is effectively "at home" in the forum state. *Daimler AG*

*v. Bauman*, 134 S. Ct. 746, 761 (2014).  For an individual that is typically their domicile, and for a corporation, "the place of incorporation and principle place of business are 'paradig[m] . . . bases for general jurisdiction.'"  *Id*. at 760 (citation omitted); *Holman v. AMU Trans, LLC*, 2015 WL 3918488, at *2 (N.D. Ill. June 25, 2015) (same as to limited liability company).  Finding jurisdiction otherwise is appropriate only in an "exceptional case."  *Daimler AG*, 134 S. Ct. at 761 n.19.  This case is plainly not the exceptional one, since Defendants have virtually no actual presence in Missouri, let alone contacts that would render any of them "at home" here.  *See, e.g.*, *Cortec Corp. v. Transilwrap Co.*, 2015 WL 164173, at *2 (D. Minn. Jan. 13, 2015).  Thus, the case should be dismissed with prejudice for lack of personal jurisdiction.

## II.     ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED

If not dismissed, the Court should exercise its discretion to transfer the case to the Southern District of New York, or the Eastern District of California pursuant to 28 U.S.C.A. § 1404(a).  There are twelve factors to consider, *Terra International, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 696 (8th Cir. 1997), almost all of which favor transfer.

Those factors are:  (1) The convenience of the parties (New York would be far more convenient to Defendants, while not meaningfully different for Plaintiffs); (2) The convenience of the witnesses (Either New York or California would be far more convenient than Missouri, where few if any witnesses are located); (3) The accessibility to records and documents (All are likely located in New York (for Defendants) or California (for Plaintiffs)); (4) The location where the conduct complained of occurred (The articles were written in New York and Johnson's conduct was largely in California); (5) The applicability of each forum state's substantive law (California law applies); (6) Judicial economy (either neutral or points to either alternative forum, where the law governing anti-SLAPP statutes is well-settled); (7) The

7

plaintiff's choice of forum (This is accorded little weight where neither the dispute nor a plaintiff's domicile have a connection to the forum. *Cunningham v. United Air Lines, Inc.*, 2013 WL 3984513, at *4 (E.D. Mo. Aug. 1, 2013)); (8) The comparative costs to the parties of litigating in each forum (Missouri is likely to be the most expensive since neither party is located here); (9) Each party's ability to enforce a judgment (This is either neutral or, if Defendants were to recover their attorneys' fees, favors California since Plaintiffs' assets are likely there); (10) Obstacles to a fair trial (neutral); (11) Conflict of law issues – This favors California, as does (12) the advantages of having a local court determine questions of local law. Notably, other courts have transferred media defamation cases where the locus of the dispute was clearly elsewhere. *See, e.g.*, *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352 (N.D. Ga. 2004) (transferring case to Colorado where broadcast was reported); *Holmes v. TV-3 Inc.*, 141 F.R.D. 697 (W.D. La. 1991) (transferring case about Mississippi broadcast involving Mississippi law).

### III. PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM

In the alternative, Plaintiffs' defamation, injurious falsehood, and false light claims should be dismissed on the merits. Because all causes of action challenge the same allegedly false speech, the same constitutional and state law standards apply regardless of how each one sis labeled. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 51-57 (1988); *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union*, 39 F.3d 191, 196 (8th Cir. 1994); *Farrow v. St. Francis Med. Ctr.*, 407 S.W.3d 579, 598-602 (Mo. 2013) (Missouri does not recognize duplicative defamation and false light theories); *State ex. rel. Diehl v. Kintz*, 162 S.W.3d 152, 156 n. 4 (Mo. Ct. App. 2005) ("defamation analysis applies to the tort of injurious falsehood").

### A. Plaintiffs Fail to Plausibly Allege that Defendants Acted with Actual Malice

#### 1. Plaintiffs are Public Figures

To protect the vitality of public commentary, the law differentiates between private and what libel law calls "limited purpose public figures," – *i.e.*, those individuals "who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention," thereby both "run[] the risk of closer public scrutiny" and achieve "access to the channels of effective communication" to correct alleged falsehoods about them. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342-44 (1974). Plaintiffs are the archetypical public figures.

To determine whether a plaintiff is a public figure, the court must identify (1) a public controversy giving rise to the defendant's speech; (2) and "the nature and extent" of the plaintiff's participation in the controversy. *Lundell v. Mfg. Co. v. ABC*, 98 F.3d 351, 362-63 (8th Cir. 1996). Importantly, "the determination of a plaintiff's status as a private or public figure is an issue of law." *Id.* at 362. Here, well before Defendants' publications, Plaintiffs made themselves highly controversial by provocatively injecting themselves into numerous public controversies, by personally attacking the character of other journalists, and responding in kind to anyone who criticized them. *See, e.g.*, Siegel Decl., Ex. 1 ("Note how closed minded my critics are tonight. . . . And I'm the one that's a bigot?").

Johnson, a self-proclaimed "revolutionary" of internet journalism, naturally provoked a public controversy over his own journalism and character. The first Trotter article was prompted by a social media campaign to ban Johnson on Twitter sparked by the UVA story. Trotter's second article explains that it followed a *New York Times* profile harshly criticizing Johnson. And the Howard article lays out how it was prompted by Johnson's own Facebook post touting his "notoriety" and "success," lambasting his critics as "weaker people," followed by Johnson's

e-mail to Howard pointing out and preemptively denying rumors posted on his Facebook site, which Howard included in his article. Indeed, journalists whose reporting or conduct becomes the subject of controversy are regularly held to be public figures. *O'Donnell v. CBS*, 782 F.2d 1414 (7th Cir. 1986) (television news director accused of ethical lapses); *Renner v. Donsbach*, 749 F. Supp. 987 (W.D. Mo. 1990) (newspaper columnist a public figure); *Warner vs. Kansas City Star*, 726 S.W.2d 384 (Mo. Ct. App. 1987) (same).

### 2. Plaintiffs Fail to Plausibly Allege Actual Malice

Public figures must plead "actual malice" – a term of art meaning that a challenged statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Moreover, "reckless disregard" does not mean recklessness in the ordinary sense of gross negligence. Rather, the standard is *subjective*: the inquiry focuses on the speaker's *actual state of mind*. The test is whether "the defendant made false remarks with a high degree of awareness of probable falsity, or that the defendant entertained serious doubts as to the truth of his publication." *Campbell v. Citizens for Honest Gov't*, 255 F.3d 560, 569 (8th Cir. 2001).

Importantly, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) also concerned the pleading requirements for a state of mind element, in that case knowing discrimination. Here the Complaint contains only a conclusory allegation that merely recites the legal definition of actual malice. Compl. ¶¶ 65, 75, 80, 91. Numerous courts applying *Iqbal* to defamation complaints hold that to be insufficient as a matter of law to withstand dismissal. *See, e.g., Pippen v. NBCUniversal Media, LLC*, 734 F. 3d 610 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 2829 (2014); *Mayfield v. NASCAR*, 674 F.3d 369 (4th Cir. 2012); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012). Moreover, the articles on their face negate any plausible

10

inference of malice, thus making any effort to amend futile. For example: numerous other media articles also criticize Johnson; Defendants' articles link to their source material so that readers can judge for themselves; they extensively include Johnson's denials and point of view; and they humorously suggest they agree with Johnson with respect to the two rumors the Complaint alleges are false. *See* Anti-SLAPP Mem. at 11-12.

**B.    The Allegedly Defamatory Statements Are Also Not Actionable**

**1.    The Statements about Plaintiffs' Faulty Reporting**

Alternatively, Statements A, B, C, and J (Ex. 1) should be dismissed because they are non-actionable opinions about Johnson's reporting based on disclosed source material. Whether language is actionable defamation is a question of law. *Shepard v. Cortoise*, 115 F. Supp. 2d 1142, 1147 (E.D. Mo. 2000). The First Amendment forbids liability for "statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-21 (1990) (citation omitted). Generally, when a writer discloses the facts upon which his conclusion is based, that renders the conclusion opinion because the reader is free to judge for themselves. *Diez v. Pearson*, 834 S.W.2d 250, 253 (Mo. Ct. App. 1992). Moreover, a court must assess "the totality of the circumstances" to determine whether, in context, an author is asserting an opinion. *Others First Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*, --- F. Supp. 3d ---, 2015 WL 1886623, at *4 (E.D. Mo. Apr. 24, 2015) (granting motion to dismiss), *appeal filed*, No. 15-2184 (8th Cir. May 22, 2015).

*Moldea v. New York Times Co.*, 22 F.3d 310 (D.C. Cir. 1994), established what is widely-regarded as the relevant analysis to apply when one journalist critiques the work of another. Because such articles reflect "a genre in which readers expect to find spirited critiques," *Moldea* held that as long as the critique is a "supportable interpretation" of the other's work that is

11

supported by examples, it is non-actionable. *Id.* at 311-313; *see also McClure v. Am. Family Mut. Ins. Co.*, 223 F.3d 845, 853 (8th Cir. 2000) ("'A commentator who advocates one of several feasible interpretations of some event is not liable in defamation.'" (citations omitted)).

Here, the authors' critique that Johnson "gets things wrong a lot," (Ex. 1, Statement J; *see also* Statements A & B), is supported by several examples of his reporting, with hyperlinks to sources that discuss them. Defendants' critique is certainly a "supportable interpretation," since those sources debunk his reporting. Indeed, the Complaint illustrates why their analysis is protected opinion. It asserts the hyperlinked sources do not support the conclusion that Johnson's reporting was wrong. Compl. ¶ 20 nn. 4-5. While that seems a far less supportable interpretation, the point is that readers are free to decide for themselves.

The same is true for Statement C, "[i]n other words, Brown deserved to die." This is Trotter's subjective interpretation of words that he quotes from Johnson's article, so readers can readily decide whether they share his opinion. *See, e.g., Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d 697 (D. Md. 2000), *aff'd*, 11 F. App'x 99 (4th Cir. 2001); *Redmond v. Gawker Media*, 2012 WL 3243507 (Cal. Ct. App. Aug. 10, 2012) (both holding that articles were protected opinion where they linked to their sources); *see also Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995) ("when an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment").

### 2. Defendants' Humorous Queries About Rumors Are Not Capable of a Defamatory Meaning and Do Not Assert those Rumors as Fact

In defamation cases, a threshold question of law for the Court is whether the statements at issue are reasonably capable of a defamatory meaning. *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 820 (8th Cir. 2010). Importantly, statements must not be viewed in isolation, but must be

construed within the context of the article as a whole. *Ribaudo v. Bauer*, 982 S.W.2d 701, 704-06 (Mo. Ct. App. 1998). Statements that do not assert actual facts about a plaintiff are not actionable. *Fjelsta v. Zogg Dermatology, PLC*, 488 F.3d 804, 810-11 (8th Cir. 2007).

With respect to Statements D, G, and K, the Complaint plucks out of context a few words describing Johnson's alleged defecation and bestiality, ignoring entirely that they are presented solely as rumors, and indeed rumors that the authors suggest are likely incredulous. In any event, the light-hearted, humorous tenor of the articles as a whole indicate they are poking fun at Johnson's expense, not asserting actual facts about him, and the articles make clear the rumors should not be taken seriously. *See, e.g.*, *Dupuis v. City of Hamtramck*, 502 F. Supp. 2d 654, 658 (E.D. Mich. 2007) ("Humor at an individual's expense is typically deemed to fall into the opinion category, as it usually falls short of being interpreted as conveying facts."); *see also* Anti-SLAPP Mem. at 12-13.[3] The Howard article pokes fun at Johnson's Facebook post and the fact that Johnson himself preemptively pointed out to Howard, in order to deny, some comments on his Facebook page about defecating on the floor. Howard says "I'd be inclined to believe the guy [Johnson], or at least give him the benefit of the doubt," and then mockingly notes the importance of fact-checking in light of the *Rolling Stone* debacle. And Howard's statement that "[t]here is some good-ass kinja to be had" (Statement L) is likewise, as Johnson himself essentially alleges, just a humorous way of saying there are some entertaining reader comments. It asserts nothing factual at all about Plaintiffs.

The second Trotter article examines the two rumors Johnson challenges in order to light-heartedly conclude that "there is no evidence" they are true, but that Johnson is sufficiently disliked that he is someone about whom people are inclined to fabricate rumors. And although

---

[3] Indeed, mere insults are not actionable, so a rumor about juvenile behavior like defecating on the floor in college would not be actionable even if it was asserted as fact. *See, e.g.*, *Beverly Enters., Inc. v. Trump*, 1 F. Supp. 2d 489, 492 (W.D. Pa. 1998), *aff'd*, 182 F.3d 183 (3d Cir. 1999).

they are not actionable for other reasons (*see* Section B.3 below), the same analysis applies to Statements E, F, H, and I, all of which are third-party comments presented as examples of the same rumors that Trotter and Howard make clear are likely not true.

Moreover, even if the articles were to be taken literally, neither would be actionable because they merely raise the *question* of whether the rumors are true. As the D.C. Circuit recently noted, questions are not actionable because "it is generally settled as a matter of defamation law in other jurisdictions that a question, 'however embarrassing or unpleasant to its subject, is not accusation.'" *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1338 (D.C. Cir. 2015) (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. 1993)). "Questions indicate a defendant's 'lack of definitive knowledge about the issue.'" *Id.* (quoting *Partington*, 56 F.3d at 1157). Moreover, the suggested answer is that "there is no evidence" the rumors are true, so the articles plainly do not assert anything factual or defamatory.

### 3. The Statements Made by Third-Party Commenters to the Gawker Sites are Barred by Section 230 of the Communications Decency Act ("CDA")

Any claims based on Statements E, F, H, I, or L are also barred pursuant to Section 230 of the CDA, which protects website hosts from liability when they transmit content created by another person. Section 230 states, in relevant part, that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," 47 U.S.C. § 230(c)(1), and "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section," *id.* § 230(e)(3). As the leading case construing Section 230 explained:

> By its plain language, *§ 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.* Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. *Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content – are barred.*

14

*Zeran v. AOL, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) (emphasis added); *see also Johnson*, 614 F.3d at 790-92 (adopting *Zeran*'s analysis); *S.C. v. Dirty World, LLC*, 2012 WL 3335284, at *4 (W.D. Mo. Mar. 12, 2012) (same); *M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041 (E.D. Mo. 2011) (applying the CDA to dismiss claims against websites).

Statements E, F, H, and I are barred by Section 230. Gawker is without question an "interactive computer service" provider because its websites "enable[] computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). As a result, Plaintiffs cannot sue Defendants for statements "provided by another information content provider," *id*. § 230(c)(1) – *i.e.*, that "originat[ed] with . . . a third-party user" of Gawker's website, *Zeran*, 129 F.3d at 330. There is no dispute that other users of the website contributed Statements E, F, H and I. *See* Siegel Decl., Ex. 22; *see, e.g.*, Compl. ¶¶ 24-27, 34, 37, 39, 43-45, 52. Additionally, Statement L by Howard, which states "[t]here is some good-ass kinja to be had," and then links to comments posted to Trotter's December 9 article, is likewise barred by Section 230 because it merely offers the comment that what readers have posted is interesting.[4] As long as a website operator does not provide or alter the underlying reader comment, it "cannot be responsible for what makes another party's statement actionable by commenting on that statement *post hoc*." *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 415 (6th Cir. 2014) (internal quotations and citations omitted). As *Jones* held, merely commenting does not "'effectively ratif[y] and adopt[] the defamatory third-party post.'" *Id*. at 416-17 (citation omitted).

## CONCLUSION

For the foregoing reasons the Complaint should be dismissed, or alternatively transferred.

---

[4] "Kinja" is Gawker's online platform. It allows readers of all Gawker blogs to post comments on stories and creates "an easy and consistent reading experience throughout all Kinja blogs." *See What is Kinja?*, Kinja Support Center, http://help.gawker.com/customer/portal/articles/1099535-what-is-kinja.

Dated: August 24, 2015                             Respectfully submitted,

                                            **LEWIS, RICE & FINGERSH, L.C.**

                                            By:   /s/ Joseph E. Martineau
                                                Joseph E. Martineau, #32397
                                                600 Washington, Suite 2500
                                                St. Louis, Missouri 63101
                                                jmartineau@lewisrice.com
                                                314/444-7729
                                                314/612-7729 (facsimile)

                                                Nathan Siegel*
                                                LEVINE SULLIVAN KOCH & SCHULZ, LLP
                                                1899 L St., NW, Suite 200
                                                Washington, DC 20036
                                                Tel: (202) 508-1100
                                                Fax: (202) 861-9888
                                                nsiegel@lskslaw.com
                                                **pro hac vice*

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 24th day of August, 2015, a true copy hereof was served with the Clerk of the Court using the CM/ECF system on the following:

Jonathon Christian Burns
THE BURNS LAW FIRM, LLC
1717 Park Avenue
St. Louis, MO 63104
john@burns-firm.com

*Attorneys for Plaintiffs*

By:   /s/ Joseph E. Martineau