IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
(Eastern Division)

| | |
|---|---|
| CHARLES C. JOHNSON, *et al.*, | : |
| | : Case No. 4:15-cv-01137 |
| Plaintiffs, | : |
| v. | : |
| | : |
| GAWKER MEDIA, LLC, *et al.*, | : |
| | : |
| Defendants. | : |
| | : |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR LEAVE TO FILE BRIEF OUT OF TIME**

Defendants respectfully oppose Plaintiffs' Motion for Leave to File a Brief Out of Time. Local Rule 6-1.05 provides that the Court may modify time limits "for good cause." For the reasons submitted below, Defendants submit that good cause has not been demonstrated here.

As Plaintiffs note, they have previously requested three extensions of time to file responses to the pending motions. Defendants have consented to each as a matter of professional courtesy, in spite of the fact that it was not clear why repeated additional extensions were necessary. Moreover, when requesting the last extension, which was sought on the day Plaintiffs' papers were due, Plaintiffs' counsel specifically represented to Defendants' counsel, "Only need until this Friday, 10/9. I've got to be out of town this weekend, so you can be sure that this is the last one." (Exhibit 1.) Plainly, that turned out not to be so.

More than that, it fully appears Plaintiff Johnson was actually using the additional time to attempt to gather evidence for his responses using clearly improper means. Specifically, according to information provided to Gawker and posted on the Internet, it appears that Mr. Johnson contacted at least two, and perhaps more, former employees of Gawker and offered

to each one to "compensate you for your time" if they would provide him with supposedly internal Gawker documents that he wanted to use in his oppositions. (Exhibits 2 & 3.) Some of the documents that Mr. Johnson imagined existed, and offered to pay for, included documents that would have, had they existed, explicitly included attorney-client privileged communications. For example, in one communication appearing to come from Mr. Johnson, he offered to pay Mr. Weinstein if he could provide the following:

> **A memo on circumventing defamation laws**.  I believe that a general counsel or other lawyer has drafted a memo for Gawker, detailing the fundamentals of defamation law, and outlining ways in which Gawker writers can circumvent defamation liability.  Possible examples might include . . . the level of protections that ANTI-SLAPP laws offer . . . .

(Exhibit 4.) The purpose of offering to pay for such supposed internal and even privileged Gawker documents was plainly a futile attempt to gather evidence to be used in Plaintiffs' oppositions.  Similarly, Mr. Johnson offered to pay for an imagined "memo describing the BUSINESS MODEL of Gawker and ALSO the Importance of SPECIFICALLY TARGETING viewers in SPECIFIC geographic areas.  ESPECIALLY TARGETING ST. LOUIS OR MISSOURI." *Id*. (emphasis in original).  These two requests relate directly to Defendants' anti-SLAPP motion and motion for lack of jurisdiction.

If that were not enough, in at least one case, when a former employee was not forthcoming, it appears that Mr. Johnson threatened to join him in this lawsuit to try to elicit his cooperation, specifically accusing him of being "the one who made up things about me" and saying, "I'm asking politely now.  Please don't make me pull you in on the Gawker suit."[1] (Exhibits 5 & 6.)

---

[1] Plaintiffs' efforts in this regard quickly became public, because one of the former employees involved, in addition to forwarding this correspondence to one of Gawker's in-house counsel to make her aware of it, posted it all on Twitter where it has elicited considerable public comment.  In fact, yesterday, one of Gawker's readers (who is not associated with Gawker in any way) posted on his reader blog correspondence with Mr. Johnson in which he

2

In fact, this morning Mr. Johnson appears to have confirmed that his efforts to improperly obtain evidence are the real reason for the pending motion, rather than the explanation the motion provides to this Court:

> Don't worry, guys. We are going to crush Gawker.  My lawyer and I both decided that it would make more sense to get it right so we've filed for an extension.  There are whistleblowers coming out to talk about how Gawker has built a business out of defamation.

(Exhibit 8.)  Had Defendants known that Mr. Johnson intended to use the last-minute extension Plaintiffs requested on October 5 for these improper purposes, Defendants would not have consented to an extension and would instead have opposed it on these grounds.  For the same reasons, we do not agree that Plaintiffs are currently seeking leave to file a brief out of time for reasons unrelated to causing "undue delay or prejudice to Defendants."  Pl. Motion at 3, ¶ 13.  Moreover, Plaintiffs have now had plenty of time to prepare these responses to motions that were filed on August 24, and the nature of Mr. Johnson's activity, combined with his attorney's explicit representation that no further time would be necessary nor requested, suggests that additional time was not necessary to file bona-fide responses.

Finally, Plaintiffs' motion seems to imply that their counsel has communicated with us regarding this fourth request.  *Id*. at ¶¶ 13-14.  In fact, Plaintiffs' counsel have not contact us since October 5, the last time he sought an extension, until he sent an e-mail at 1:07 this morning informing us that the present motion for leave to file out of time had already been filed.  Nor does his motion provide any explanation as to why he did not file a timely request for an extension on or before October 9, nor why he did not communicate with us before filing

---

played a joke on Mr. Johnson by purporting to have access to such imagined documents.  The spoof (or "troll," in Internet parlance) evidently worked, as Mr. Johnson forwarded him the same request for specific memos, including what would be privileged communications, and wrote, "This is what I'm looking for and will pay for if you have it." (Exhibit 7.)

3

yesterday's untimely motion.  In fact, Plaintiffs' motion provides no meaningful explanation at all as to why it was necessary for him to seek this extraordinary relief.  All of these circumstances support the conclusion that there is no "good cause" demonstrated to grant the present motion.

## CONCLUSION

For the foregoing reasons, Defendants request that Plaintiffs' Motion for an Extension be denied, and further that Defendants' pending motions be granted.

Dated:  October 13, 2015                                Respectfully submitted,


**LEWIS, RICE & FINGERSH, L.C.**

By:     /s/ Joseph E. Martineau
    Joseph E. Martineau, #32397
    600 Washington, Suite 2500
    St. Louis, Missouri  63101
    jmartineau@lewisrice.com
    314/444-7729
    314/612-7729 (facsimile)

    Nathan Siegel*
    LEVINE SULLIVAN KOCH & SCHULZ, LLP
    1899 L St., NW, Suite 200
    Washington, DC 20036
    Tel: (202) 508-1100
    Fax: (202) 861-9888
    nsiegel@lskslaw.com
    *pro hac vice*

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 13th day of October, 2015, a copy of the above and foregoing document was served via the Court's electronic filing system:

>John C. Burns
>**THE BURNS LAW FIRM**
>1717 Park Avenue
>St. Louis, Missouri  63104
>john@burns-firm.com
>
>*Attorneys for Plaintiff*

By:     /s/ Joseph E. Martineau