IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
(Eastern Division)

| | |
|---|---|
| CHARLES C. JOHNSON, *et. al* | : |
| | : Case No. 4:15-cv-01137 |
| Plaintiffs, | : |
| v. | : |
| | : |
| GAWKER MEDIA, LLC, *et. al,* | : |
| | : |
| Defendants. | : |
| | : |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
SPECIAL MOTION TO STRIKE THE COMPLAINT PURSUANT TO THE
<u>CALIFORNIA ANTI-SLAPP LAW</u>**

**<u>INTRODUCTION</u>**

Plaintiffs do not meaningfully dispute that California law applies to their claims.  Their first argument is that the California anti-SLAPP statute may not be applied in federal court pursuant to the *Erie* doctrine.  That argument was rejected by the Ninth Circuit sixteen years ago, and it fares no better here.  Next, Plaintiffs maintain that if the anti-SLAPP statute is applied, it applies to some but not all of the specific sentences they complain about within the same articles.  California courts have long rejected that proposed salami-slicing approach to the statute.

To defeat Defendants' anti-SLAPP motion on the merits, Plaintiffs were required to come forward with admissible evidence showing a probability that they could prevail on the merits of their claims.  Plaintiffs' Opposition provides no evidence of any kind, let alone admissible evidence.  For that reason alone, they have failed to meet their burden and the anti-SLAPP motion *must* be granted in its entirety.  Cal. Civ. Proc. Code § 425.16.  Even if Plaintiffs' unsupported assertions in their Memorandum of Law were credited, it would make no difference because on the merits Defendants are entitled to judgment as a matter of law.

## ARGUMENT

I.  **IT IS WELL-SETTLED THAT THE *ERIE* DOCTRINE REQUIRES FEDERAL COURTS TO APPLY THE CALIFORNIA ANTI-SLAPP STATUTE.**

In their Opposition, Plaintiffs have changed their rationale for trying to avoid California's anti-SLAPP statute by litigating this case in Missouri. Initially, Plaintiffs filed this case in state court and alleged that their claims arose under Missouri law, which has no anti-SLAPP statute. Compl. ¶ 63. Now, however, they do not offer any response to Defendants' showing that Missouri's choice-of-law rules require the application of California law. Instead, they maintain even if California law applies, the anti-SLAPP law cannot be applied by this Court sitting in diversity pursuant to the *Erie* doctrine.

Plaintiffs do not dispute, or even address, the fact that if this lawsuit were in a California federal court, there would be no question that the anti-SLAPP law would be applied because the Ninth Circuit holds that its application in federal diversity suits is consistent with *Erie*. *See United States, ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 970-73 (9th Cir. 1999). Thus, Plaintiffs are asking this Court to rule that the *Erie* doctrine provides that California residents should be empowered to evade their state's anti-SLAPP law by traveling to other federal district courts outside the Ninth Circuit to litigate their cases. That proposition should be soundly rejected.

Specifically, Plaintiffs argue that the California anti-SLAPP statute is pre-empted by Rules 8, 11, 12 and 56 of the Federal Rules of Civil Procedure. Opp. at 1-4. That is the same argument the Ninth Circuit rejected in *Newsham*, and ever since then the California statute has been consistently applied by federal courts in numerous other Circuits as well. *See* Dkt. 22 at 9 (citing cases). Plaintiffs provide no basis for this Court to become the first in the nation to depart from this unbroken line of authority and endorse a unique means of forum-shopping, because

2

their arguments misapprehend both the applicable *Erie* analysis and the operation of the California anti-SLAPP statute.

When a state law is alleged to be preempted by a federal rule, the *Erie* doctrine requires a two-part inquiry.  The first question is whether Rules 8, 12 and 56 are "sufficiently broad to control the issue before the Court" such that there is a "direct collision" between those federal rules and the anti-SLAPP statute.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 422, 439 (2010) (Stevens, J., concurring).[1]  If the answer is no, the court must then proceed to evaluate whether the failure to apply state law would frustrate the "twin aims" of *Erie*: "discouragement of forum shopping and avoidance of inequitable administration of the laws," *Hanna v. Plummer*, 380 U.S. 460, 468 (1965); *see also Godin v. Schencks*, 629 F.3d 79, 86-87 (1st Cir. 2010).  If the answer is yes, the court may not apply the state law unless it determines that the federal rule violates the Rules of Decision Act.  28 U.S. Code § 1652.

In addressing the first question, *Newsham* held that there is no direct collision between the California statute and Rules 8, 12 and 56.  190 F.3d at 972-73.  Those federal rules are general rules of procedure available for all claims, while the anti-SLAPP statute provides additional special protections akin to a state-law immunity for a small subset of claims that threaten substantive free speech and petition rights.  *Id*. at 972; *see also Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003) (the California statute provides "a substantive immunity from suit").  Moreover, Congress has also enacted various statutes that apply different substantive and pleading standards for particular categories of cases, such as securities fraud lawsuits, which

---

[1] *Shady Grove*, the Supreme Court's most recent case addressing the *Erie* doctrine, produced a fractured court and as a result Justice Stevens' concurring opinion is generally deemed controlling.  *Garman v. Campbell Cty. Sch. Dist. No. 1,* 630 F.3d 977, 983 n.6 (10th Cir. 2010) (same), *cert. denied,* 132 S. Ct. 95 (2011).  In any event, it makes no difference here because both Justice Stevens' concurrence and that portion of Justice Scalia's opinion that garnered a majority made clear that the case did not augur any meaningful departure from the basic two-step *Erie* framework the Court has applied for decades.  *See Shady Grove*, 559 U.S. at 398 ("The framework for our decision is familiar"); *see also id*. at 421 ("our precedents have set out a two-step framework for federal courts to negotiate this thorny area") (Stevens, J., concurring).

3

further demonstrates that those federal rules were not intended to "occupy the field" with respect to all possible standards governing the pre-trial dismissal of lawsuits. *Godin*, 629 F.3d at 91 (quoting *Newsham*, 190 F.3d at 972). Several other circuits have reached the same conclusion with respect to some other states' anti-SLAPP laws. *See id.* at 86-87 (Maine's anti-SLAPP statute applies in federal diversity actions); *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 170 (5th Cir. 2009) (Louisiana's anti-SLAPP statute applies).

Turning to the second step of the *Erie* inquiry, *Newsham* held that "that the twin purposes of the *Erie* rule—'discouragement of forum-shopping and avoidance of inequitable administration of the law'—favor application of California's Anti–SLAPP statute in federal cases." 190 F.3d at 973 (citation omitted). The Ninth Circuit noted that if the statute was not applied by federal courts, "a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum." *Id.* This case starkly illustrates that point.

Plaintiffs' Opposition entirely ignores all of this authority, which is directly on point. Instead, they essentially offer two arguments. First, Plaintiffs argue that the anti-SLAPP statute "conflict[s]" and "impermissibly interferes" with (1) Rules 8 and 12 because it requires more than Rule 12's "plausibility" standard, Opp. at 2-4, and (2) with Rule 56 because it presumptively stays discovery. *Id.* at 4. That argument lacks merit for two reasons.

First, as discussed above, the test is not whether the state law and federal rules are different, but rather whether they "directly collide." Just as Rules 8, 12 and 56 co-exist even though each of those Rules must be judged by quite different standards, the same is true for California's anti-SLAPP statute and the federal rules. Indeed, there are actually many more federal rules beyond those three that authorize pre-trial dismissal of suits for various reasons, like

4

Rules 9(b), 11, 19, 23.1, 37 and 55, which reinforces the point that no single rule or rules occupy that field, nor do they conflict with each other simply because they may be different.

But even if that were not so, it would not matter because California's anti-SLAPP statute's operation does not conflict with the federal rules.  As construed by California courts, whether a plaintiff can show a "probability of prevailing" under the anti-SLAPP statute is judged by a traditional summary judgment standard.  *Oviedo v. Windsor Twelve Props.*, 212 Cal. App. 4th 97, 111 (2012) ("The probability of prevailing standard is satisfied when the party opposing an anti-SLAPP motion presents admissible evidence demonstrating . . . the existence of disputed material facts.").  And while the filing of an anti-SLAPP motion presumptively stays discovery, discovery may be ordered "for good cause shown" upon motion by the plaintiff.  Cal. Code. Civ. P. § 425.16(c)(2)(g).  Likewise, under the federal rules nothing precludes a party from filing a threshold motion for summary judgment, whereupon Rule 56(d) also requires the non-movant to "show" that "for specified reasons it cannot present facts sufficient to justify its opposition" without discovery.  As a result, federal courts in California have for years addressed motions for discovery to respond to an anti-SLAPP motion in a manner consistent with Rule 56(d).  *See, e.g.*, *Price v. Stossel*, 590 F. Supp. 2d 1262, 1271 (C.D. Cal. 2008); *Bulletin Displays, LLC v. Regency Outdoor Advert., Inc.*, 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006); *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999).[2]

For the same reason, the California statute does not violate the Seventh Amendment as Plaintiffs suggest, Opp. at 4, because it does not permit the court to resolve any disputed material facts.  *Godin*, 629 F.3d at 90 n.18 (anti-SLAPP laws that do not authorize judges to resolve disputed material facts raise no Seventh Amendment issue); *Pease v. Rathbun-Jones Eng'g Co*.,

---

[2] Plaintiffs did not move for leave to take any discovery in order to respond to Defendants' anti-SLAPP motion.

5

243 U.S. 273, 278 (1917) (summary judgment does not violate Seventh Amendment). The California statute is therefore quite different than the anti-SLAPP laws of Minnesota and a few other states, which as construed by courts within their jurisdictions do require courts to resolve material disputes of fact and therefore may not necessarily apply in federal court. *See, e.g.*, *Abbas v. Foreign Policy Grp. LLC*, 783 F.3d 1328, 1333-35 (D.C. Cir. 2015); *Unity Healthcare, Inc. v. County of Hennepin*, 308 F.R.D. 537 (D. Minn. 2015) (cited by Opp. at 2).

Finally, Plaintiffs argue that because the anti-SLAPP statute permits recovery of attorneys' fees and costs it conflicts with Rule 11. Opp. at 4. The only support for that proposition they offer is *Garza v. Scott & White Memorial Hospital*, 234 F.R.D. 617, 622-23 (W.D. Tex. 2005), which held that a Texas statute designed to weed out frivolous medical malpractice suits by requiring an expert's affidavit of merit cannot be applied by federal courts. But the California anti-SLAPP law does not purport to be California's version of Rule 11; in fact, California's version of Rule 11 is unrelated to the anti-SLAPP law. *See* Cal. Code Civ. P. § 128.7.

Rather, the anti-SLAPP statute simply provides for fee-shifting in favor of a prevailing defendant for certain categories of claims. It has been well-settled for more than half a century that state-law fee-shifting statutes must be applied by federal courts sitting in diversity because they are part of a state's rubric of substantive remedies. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949); *Hortica-Florists' Mut. Ins. Co. v. Pittman Nursery Corp.*, 729 F.3d 846, 852 (8th Cir. 2013); *Godin*, 629 F.3d at 85 n.10. *Garza* did not concern fee-shifting, but in any event it is an outlier that directly conflicts with the law of this Circuit, which holds that state statutes requiring affidavits of merit in medical malpractice suits do apply in federal diversity actions. *Weasel v. St. Alexius Med. Ctr.*, 230 F.3d 348 (8th Cir. 2000) (applying North Dakota's

6

affidavit of merit statute under *Erie*); *see also Chamberlain v. Giampapa*, 210 F.3d 154, 162-63 (3d Cir. 2000). Thus, the *Erie* doctrine requires that California's anti-SLAPP law be applied here, and certainly does not support facilitating the forum-shopping in which Plaintiffs propose to engage to try to avoid the operation of their own state's laws.

## II.     THE CALIFORNIA ANTI-SLAPP STATUTE APPLIES TO THIS CASE.

Next, Plaintiffs make the same argument with respect to the anti-SLAPP statute that they make about the public figure doctrine in their Opposition to Defendants' motion to dismiss. They concede that the anti-SLAPP statute applies to all of the statements concerning Johnson's "career as a journalist" because those are "issue[s] of public interest" within the meaning of the statute. Opp. at 7, 10. But they contend that rumors about bestiality and defecation in the same articles are not matters of public interest and fall outside of the statute's protection. *Id.* at 4-7. That argument fails for either of two independent reasons.

### A.     Gawker's Articles All Pertain To An Issue of Public Interest.

First, all of the statements in the articles at issue easily qualify as pertaining to issues of "public interest" as that term is used in the anti-SLAPP statute. Like the statute itself, the question of whether something is an issue of public interest must be "construed broadly." *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal. App. 4th 450, 464 (2012) (quotations and citations omitted). The concept is not, as Plaintiffs imply, meant to differentiate between a judge's view of high and low-brow topics of speech. *Nygard, Inc. v. Uus-Kerttula*, 159 Cal. App. 4th. 1039, 1042 (2008) ("the issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest"). Rather, as the very cases Plaintiffs cite demonstrate, the main question is whether a statement relates to something in which the public is interested, or whether it was made within a purely private

7

dispute such that it is only "a matter of concern to the speaker and a relatively small, specific audience."  Opp. at 6 (quoting *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1123 (2003)).  For example, *Weinberg* concerned a lawsuit between two token collectors, one of whom had accused the other of stealing a token from him, which the Court held might be important to the two collectors, but not to the public.

Gawker's articles, on the other hand, can hardly be characterized as a "private controversy" as Plaintiffs suggest.  Rather, an "issue of public interest" is "any issue in which the public is interested." *Hecimovich*, 203 Cal. App. 4th at 465.  Given Johnson's notoriety, media reports about rumors that would suggest he is essentially a hypocrite with respect to his own behavior easily qualify.  For example, since they launched this lawsuit Plaintiffs have publicized what they characterize as "rumors" that *Fox News'* Megyn Kelley had an affair—a matter they clearly think is "an issue of public interest."[3]  California courts have found defamation suits to involve an "issue of public interest" involving people far less controversial than Johnson, in circumstances far less relevant to public debate than his notorious brand of personal attack journalism.  *See, e.g.*, *Seelig v. Infinity Broad. Corp*, 97 Cal. App. 4th 798, 808 (2002) (radio talk show host called a contestant on the program *Who Wants to Marry a MultiMillionaire* a "skank"); *Nygard*, 159 Cal. App. 4th. at 1042 ("celebrity gossip" or "'tabloid' issues" qualify); *Hall v. Time Warner, Inc.*, 153 Cal. App. 4th 1337 (2007) (Marlon Brando's former housekeeper being named in his will).[4]

---

[3] *See* Charles C. Johnson, *Megyn Kelly Affair, Fox News's "Research Division" and The Loving The Party Problem*, GotNews (Aug. 11, 2015), http://gotnews.com/megyn-kelly-affair-fox-newss-research-division-and-the-loving-the-party-problem.

[4] Indeed, since this lawsuit was filed, GotNews's and Johnson's personal Facebook accounts were temporarily frozen after Johnson posted how a U.S. State Department official was using the infidelity website Ashley Madison, part of a campaign Plaintiffs launched to expose every Obama Administration employee they can identify contained in the Ashley Madison data that was hacked.  *See* Charles C. Johnson, *BREAKING: Facebook Deletes Entire GotNews Account Over Migrant Post*, GotNews (Oct. 16, 2015), http://gotnews.com/breaking-facebook-deletes-entire-gotnews-account-over-migrant-post.

8

But perhaps the clearest example of why this case is subject to the anti-SLAPP law is *Sipple v. Foundation for National Progress*, 71 Cal. App. 4th 226 (1999), which Plaintiffs try to distinguish, but cannot. Opp. at 7. *Sipple* rejected the same arguments that Plaintiffs make here. The plaintiff in *Sipple* was a nationally known political consultant who, similar to Johnson, acknowledged that he was a public figure for purposes of elections, but argued that he was not for purposes of accusations by his wife in their divorce proceeding of domestic abuse. And like Plaintiffs, he asserted that the allegation was not a "public issue" for purposes of the anti-SLAPP statute. The plaintiff in *Sipple* even cited the same cases as Plaintiffs do here, like *Time, Inc. v. Firestone*, 424 U.S. 448 (1976) (cited by Opp. at 5), to support that position.

However, Sipple was not only known as a consultant, he was known specifically for focusing on the issue of domestic violence and other family values issues to elect candidates. The court's response to his arguments thus squarely applies here:

> The court [in *Firestone*] held that the divorce of an extremely wealthy person did not in and of itself constitute a public controversy sufficient to cast the divorcé as a public figure. Here, on the other hand, the issues of spousal abuse generated in the custody proceedings are of public interest when the person accused of the abuse is a nationally known figure identified with morality campaigns for national leaders and candidates . . . .

71 Cal. App. 4th at 239. For the same reasons, Plaintiffs cannot complain when Johnson's penchant for exposing others' alleged sexual and personal peccadillos causes the spotlight to turn towards them.

### B. California Law Does Not Permit Treating Sentences Within The Same Articles Differently For Purpose Of The Anti-SLAPP Statute.

Moreover, even if viewed in isolation the rumors would not pertain to an issue of public interest, it would not matter because California law squarely rejects Plaintiffs' proposed approach. The anti-SLAPP statute must be construed broadly, *Navellier v. Sletten*, 29 Cal. 4th 82, 87-88 (2002), and it applies to "[a] cause of action against a person arising from *any* act of

9

that person in furtherance of the person's right of petition or free speech," Cal. Code. Civ. Pro. § 425.16(b)(1) (emphasis added). Thus, "a plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.'" *Fox Searchlight Pictures v. Paladino*, 89 Cal. App. 4th 294, 308 (2001). Rather, "if at least one of the underlying acts is protected conduct," the entire cause of action is subject to the statute "unless the allegations of protected conduct are merely incidental to the unprotected activity." *Salma v. Capon*, 161 Cal. App. 4th 1275, 1287 (2008). Thus, having pled causes of action that Plaintiffs concede do arise in material part from speech subject to the statute, the Act applies to all the statements contained in the causes of action they have pled. *Id*.

### III.  PLAINTIFFS HAVE NOT ESTABLISHED A PROBABILITY OF SUCCEEDING ON THE MERITS

#### A. Plaintiffs Are Public Figures And Have Provided No Evidence of Actual Malice.

As public figures, *see* Defs.' Mot. to Dismiss Reply at 4-7, it is Plaintiffs' burden to provide admissible evidence by which a trier of fact could find clear and convincing evidence that Defendants subjectively believed that their reports were false. Both with respect to opposing an anti-SLAPP motion and a summary judgment motion, this is a "heavy burden," especially because the "clear and convincing" standard must be applied now. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986); *Christian Research Inst. v. Alnor*, 148 Cal. App. 4th 71, 84 (2007) ("This requirement [on an anti-SLAPP motion] imposes a 'heavy burden, far in excess of the preponderance sufficient for most civil litigation'" (quoting *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1186-87 (9th Cir. 2001)); *see also Price v. Viking Penguin, Inc.*, 881 F.2d 1426 (8th Cir. 1989) (affirming summary judgment on issue of actual malice); *Speer v. Ottoway Newspapers, Inc.*, 828 F.2d 475 (8th Cir. 1987) (reversing trial verdict on the issue of actual

malice). Anti-SLAPP motions have thus frequently been granted for failure to provide evidence that could establish actual malice. *Beilenson v. Superior Court*, 44 Cal. App. 4th 944, 953 (1996); *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1166 (2004); *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 27 (2007).

Here, Defendants' motion must be granted because Plaintiffs have failed to submit any evidence of actual malice, let alone clear and convincing evidence. *See Beilenson*, 44 Cal. App. 4th at 953. Moreover, they do not address all the case law cited in Defendants' Opening Memorandum which makes clear that the manner in which Trotter and Howard wrote these articles—including linking to the materials supporting their views, providing Johnson's point of view, and making it clear to readers exactly which rumors could or could not be substantiated—is the antithesis of actual malice. Dkt. 22 at 11-12.

In that regard, it bears mentioning that Trotter actually discussed *three* rumors (and Howard one). Trotter concluded that one appeared to be credible (Johnson urinating in his girlfriend's mouth), while the other two did not (as did Howard). Their conclusions thus reflect *exactly* what Johnson maintains is the truth.[5] It would be difficult to find a clearer example of the absence of actual malice.

### B. Plaintiffs Fail To Establish That The Statements Are Actionable Defamation.

For the reasons discussed in Defendants' Reply concerning their Motion to Dismiss, *see* Defs.' Mot. to Dismiss Reply at 9-15, all of the challenged statements are protected opinion, are not defamatory, and/or are protected by Section 230 of the Communications Decency Act. Plaintiffs therefore cannot demonstrate a probability of prevailing on the merits of their defamation claims, within the meaning of the anti-SLAPP law, for those reasons as well.

---

[5] Johnson has never alleged in this case that the rumor concerning his ex-girlfriend was false.

### C. Plaintiffs' Tag-Along Claims Must Be Dismissed.

Plaintiffs essentially agree that the viability of their remaining claims rise or fall with the defamation cause of action. *See* Opp. at 16. Because they fail to state a claim for defamation, the law is clear that the remaining tag-along claims necessarily fail as well. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1193 n.3 (9th Cir. 1989) ("In order to survive as a separate cause of action, a false light claim must allege a nondefamatory statement.").

### CONCLUSION

This case is exactly the type of lawsuit for which the California anti-SLAPP Act was enacted. Johnson has defended filing this lawsuit by calling Gawker "a terrorist organization," and boasts that the suit is a warning "to all media bullies and thugs that I will always defend my reputation and stand up to them in both the court of public opinion and the courts if necessary."[6] The purpose of the anti-SLAPP law is to prevent such use of litigation as a vehicle to threaten and punish one's critics. Accordingly, Defendants' Special Motion to Strike should be granted, with the amount of their reasonable attorneys' fees and costs to be determined after filing a timely, post-judgment motion for fees and costs.

---

[6] *See* Charles C. Johnson, *Facebook* (Oct. 5, 2015), https://www.facebook.com/charles.c.johnson/posts/ 10205087861376345?comment_id=10205087876336719&offset=0&total_comments=2&comment_tracking={%22t n%22%3A%22R0%22}.

Dated:  November 12, 2015　　　　　　　Respectfully submitted,

                              **LEWIS, RICE & FINGERSH, L.C.**

                              By:     /s/ Joseph E. Martineau
                                  Joseph E. Martineau, #32397
                                  600 Washington, Suite 2500
                                  St. Louis, Missouri  63101
                                  jmartineau@lewisrice.com
                                  314/444-7729
                                  314/612-7729 (facsimile)

                                  Nathan Siegel*
                                  LEVINE SULLIVAN KOCH & SCHULZ, LLP
                                  1899 L St., NW, Suite 200
                                  Washington, DC 20036
                                  Tel:  (202) 508-1100
                                  Fax:  (202) 861-9888
                                  nsiegel@lskslaw.com
                                  *pro hac vice*

                            *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 12th day of November, 2015, a copy of the above and foregoing document was filed with the Court and served upon counsel for Plaintiffs via the Court's electronic filing system, as follows:

>Jonathon Christian Burns
>**THE BURNS LAW FIRM**
>1717 Park Avenue
>St. Louis, Missouri  63104
>john@burns-firm.com
>
>*Attorneys for Plaintiffs*

By:  /s/ Joseph E. Martineau