IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
(Eastern Division)

| | |
|---|---|
| CHARLES C. JOHNSON, *et al.*, | : |
| | : |
| Plaintiffs, | : Case No. 4:15-cv-01137 |
| v. | : |
| | : |
| GAWKER MEDIA, LLC, *et al.*, | : |
| | : |
| Defendants. | : |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO AMEND THE COMPLAINT**

**INTRODUCTION**

Plaintiffs' motion for leave to amend should be denied because the proposed amendment would be futile. The proposed Amended Complaint ("PAC") is merely longer, largely because most of the additional allegations are directed at cataloguing every irrelevant criticism Plaintiffs have of Gawker going back more than a decade that they wish to use this litigation as a platform to air. However, it provides no more of a basis for exercising jurisdiction than does the operative Complaint, nor does not it add anything that would state viable claims on the merits. Moreover, the PAC adds nothing that would change the choice-of-law analysis applicable to this case, and thus it would be equally subject to dismissal under the California anti-SLAPP statute.

Specifically, the PAC differs from the Complaint in three principal respects, none of which warrant granting leave to amend. *First*, it adds about fifteen pages of *ad hominem* attacks against Gawker concerning stories and events going back more than a decade. Dkt. 45-1 ¶¶ 20-113. Those allegations are substantively irrelevant, but they reinforce the conclusion that this is a classic "SLAPP" lawsuit intended to be a means of retaliating against a perceived critic.

1

*Second*, the PAC simply adds more examples of the same allegedly defamatory statements in the Complaint, and they fail as a matter of law for the same reasons as the present Complaint does.

*Third*, the only additional cause of action the proposed Amended Complaint adds is entirely frivolous.  Plaintiffs allege they have a constitutional property right to learn the identities of their critics so that they can sue them too.  They further allege that Defendants are state actors who are responsible for violating their rights because Defendants invoke the immunity provided by Section 230 of the Communications Decency Act.  In fact, the law takes the opposite view: Gawker's third-party commenters have a First Amendment privilege to speak anonymously in order to protect themselves from predatory lawsuits intended to stifle criticism and debate. Plaintiffs' motion should be denied, and their Complaint dismissed with prejudice.

## ARGUMENT

I.  THE RELEVANT LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) governs amendments to pleadings, providing, "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  However, the court may properly deny a party's motion to amend its complaint when such an amendment would unduly prejudice the nonmoving party or would be futile.  *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) (citing *Kozohorsky v. Harmon,* 332 F.3d 1141, 1144 (8th Cir. 2003)).  Thus, "there is no absolute right to amend a pleading," *Maurer v. Chico's FAS Inc.*, 2013 WL 6388451, at *1 (E.D. Mo. Dec. 6, 2013), and "futility of the amendment" is an appropriate ground for denying a motion to amend, *Popoalii*, 512 F.3d at 497 (citing *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir.1998)).  "When a court denies leave to amend a complaint 'on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand' a motion to dismiss pursuant to Rule 12." *Bakhtiari v.*

2

*Beyer*, 2008 WL 3200820, at *1 (E.D. Mo. Aug.6, 2008) (citing *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007)). As demonstrated below, "justice" does not weigh in favor of permitting amendment here because, as with Plaintiffs' current Complaint, the PAC does not confer jurisdiction over these Defendants and fails to state any viable cause of action.

## II.   THE PROPOSED AMENDMENT WOULD BE FUTILE

### A.   This Court Lacks Personal Jurisdiction Over Defendants.

The jurisdictional allegations in the PAC do not materially differ from the original complaint. PAC ¶¶ 1-19. In fact, many of them are directed at trying to establish that *Plaintiffs* have some connection to this forum because they have reported on events in Missouri. *Id.* ¶¶ 98-111. But even if true, those facts could not establish specific jurisdiction, which focuses on whether Plaintiffs' causes of action arise out of any activities by the Defendants that were purposefully directed at the forum. *Johnson v. Arden*, 614 F.3d 785, 795 (8th Cir. 2010) (citation omitted).

Nor could those additional allegations establish general jurisdiction, which focuses exclusively on whether Defendants are "at home" here. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014). The PAC's allegations that Gawker has sometimes previously published stories concerning events in Missouri does not equate to Missouri being its home. PAC ¶¶ 16-18, 116-17. Other averments in the PAC simply regurgitate allegations about the number of readers Gawker allegedly has and its general advertising practices that, for the reasons discussed in the pending Rule 12(b)(2) motion papers, likewise do not satisfy the requirement for exercising personal jurisdiction over Defendants. *See* Dkt. 19 at 3-7; Defs.' Mot. to Dismiss Reply at 2-3; *see also Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (jurisdiction must arise, if at all, "out of contacts that the 'defendant *himself*' creates with the forum State"). Because this Court still would lack jurisdiction to adjudicate the claims in the PAC, it would be futile and leave to amend

should be denied.  Moreover, the PAC pleads nothing to change the balance of factors that support the transfer of this case, and so leave to file it should be denied on that ground as well.

> **B.      The Proposed Amended Complaint Fails To Correct The Flaws In Plaintiffs' Claims.**
>
>> 1.      <u>The PAC Fails To Plausibly Allege Actual Malice</u>.

For all the reasons stated in Defendants' memoranda in support of their special motion to strike and motion to dismiss, Plaintiffs are public figures, and the PAC does nothing to correct the Complaint's failure to plead a plausible basis that could show Defendants published the allegedly false statements with "actual malice."  *Campbell v. Citizens for Honest Gov't*, 255 F.3d 560, 569 (8th Cir. 2001).  Rather, the PAC repeats the same boilerplate, conclusory allegations that are legally insufficient as a matter of law.  *See* PAC ¶¶ 224, 240, 257; *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 2829 (2014); *Mayfield v. NASCAR*, 674 F.3d 369 (4th Cir. 2012); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012)).  It also repeats the same implausible—indeed, absurd—allegation that requires twisting Defendants' words to accuse Johnson (as opposed to Cuban prostitutes) of working as Castro's agent to "fabricate[]" a story, *see* PAC ¶¶ 126-131, 240; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Nor is the allegation that Defendants refused to retract or apologize for the challenged Howard article, *see* PAC ¶¶ 175-76, probative of actual malice.  *See Milsap v. Journal/Sentinel, Inc.*, 100 F.3d 1265, 1271 (7th Cir. 1996) (refusal of newspaper's in-house lawyer to recommend retraction did not demonstrate actual malice); *Connelly v. Northwest Publ'ns, Inc.*, 448 N.W.2d 901, 905 (Minn. Ct. App. 1989) (not retracting after plaintiff's request was not probative of actual malice).  To the contrary, the fact that Defendants published all of Johnson's responses and affirmatively told readers what they found to be substantiated, and what they did not find

4

substantiated, is the antithesis of actual malice. Dkt. 22 at 11-12. Finally, the allegations that Defendants held "animosity" toward Johnson, *see, e.g.*, PAC ¶¶ 218-220, confuses constitutional malice with the common law variety, which is irrelevant here. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510 (1991) ("[a]ctual malice under the *New York Times* standard should not be confused with the concept of [common law] malice as an evil intent or a motive arising from spite or ill will").

        2.        The Statements Made By Defendants Are Not Defamatory As A Matter Of Law.

In addition to failing to plausibly plead actual malice, the PAC is futile on other grounds as well, just like the operative Complaint. Plaintiffs' 273-paragraph PAC mostly seems designed to make this case seem more complicated than it is. In reality, Plaintiffs primarily complain about four articles regarding a highly-controversial internet publisher, PAC, Ex. 13-16—the only difference from the first Complaint being that the PAC adds another article by Defendant Trotter that simply refers back to his article that is already included in the Complaint. PAC, Ex. 16. The articles criticize Plaintiffs' journalism and report on the negative public perception that has resulted from it. The articles explain that the disdain directed at plaintiff Johnson has led people to spread rumors about him, which the articles debunk, but are presented as examples of the negative perception that surrounds him.

First Trotter Article. The first article, which Plaintiffs call "Trotter First" in their PAC, was published on December 9, 2014 at 11:14 a.m. and captioned "What is Charles Johnson, and Why? The Web's Worst Journalist, Explained." Doc. 18-1; PAC, Ex. 15. The only statements of which Gawker is the content-creator relate to Plaintiffs' sloppy brand of journalism. PAC, Ex. 42, Statements A, B, AJ. As Defendants have already explained, these comments are non-actionable opinion because they offer Trotter's supportable interpretation of assessments of

5

Plaintiffs' journalism that are fully disclosed, so readers are free to draw their own conclusions. Dkt. 19 at 11-12.  All of the third party posts following the article about Johnson defecating on the floor in college are not actionable under 47 U.S.C. § 230.

Second Trotter Article.  The second article, which plaintiffs call Trotter Second, was published on December 9, 2014 at 4:20 p.m. and captioned "The Daily Caller Can't Quit Chuck Johnson."  Dkt. 48-16.  Plaintiffs' only complaint is that this article summarizes and links back to Trotter First's criticism of Johnson's reporting.  PAC, Ex. 42, Statements K & AE.  It is not actionable for the same reasons as the article it links to.

First Howard Article.  The third article, which plaintiffs call "Howard First" was published on December 9, 2014 at 4:00 p.m. and captioned "Wait, Did Clowntroll Blogger Chuck Johnson Shit on the Floor One Time?"  Dkt. 18-17.  As the exhibits attached to the PAC make clear, it was published after Howard emailed Johnson to ask him if a posting from him on his Facebook page that was circulating around the internet was genuine.  PAC, Ex. 39 at 1-2 (Johnson replied it was).  It was Johnson's response that first raised the existence of third-party internet postings about defecation, and he volunteered that "the comments about me sh__tting on the floor were made up."  *Id.* at 4.

Howard's resulting December 9 article did not report the allegation as fact, and indeed was formulated entirely in the form of a question.  It reported Johnson's denial, Howard's initial conclusion that he was "inclined" to giving Johnson "the benefit of the doubt," and requested further information.  PAC, Ex. 14 at 5.  This clearly did not report the rumor as fact, is written in a humorous style, and is not defamatory.  The same is true with respect to a tweet from Howard with a link to the article.  PAC, Ex. 42, Statements I, J, & AI.  The article also notes Johnson's reputation for journalistic errors, and expresses Howard's strong view of that—"he's been caught

6

lying many times before"—and links to Trotter First to point the reader to the basis of that view. This too is simply Howard's supportable interpretation of those critiques of Johnson's journalism.  *Id.*, Statement L.

The PAC, like the original Complaint, also complains about some reader comments posted in the wake of the December 9 Trotter and Howard articles.  *Id.*, Statement M, L, V, AI & AJ.  Under Section 230 of the Communications Decency Act, Defendants are not liable for those third party postings.  None of the allegations of the PAC that Defendants "solicited" or "encourage[ed]" the statements, *see* PAC ¶ 156, or "adopt[ed], endors[ed], advertis[ed], respond[ed] to, interact[ed] with, and direct[ed]" third parties to post this content has any impact, as a matter of law, on the protection Section 230 provides to third-party material, PAC ¶ 160. Indeed, the interactivity Plaintiffs complain about is precisely the participatory, free-flowing discourse on the internet that Section 230 was created to encourage and protect.  *Zeran v. AOL, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997); *see also Johnson*, 614 F.3d at 790-92; *S.C. v. Dirty World, LLC*, 2012 WL 3335284, at *4 (W.D. Mo. Mar. 12, 2012); *M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041 (E.D. Mo. 2011); *see also* Defs.' Mot. to Dismiss Reply at 9-13.

Third Trotter Article.  The fourth article, which Plaintiffs call Trotter Third, was published on December 15, 2014 at 3:30 p.m. and again captioned in the form of a question, "Which of These Disgusting Chuck Johnson Rumors are True?"  Dkt. 18-22.  This article reports on three rumors floating on the internet, though Plaintiffs only complain about two of them. PAC, Ex. 42, Statements C-F, H, N-R, & AG.  As for the defecation rumor, the article clearly reports that "[t]here is no evidence" to support it, but posits the light-hearted opinion that

7

Johnson's former classmates' interest in spreading the rumor shows the extent to which he was disliked.

The article also reports on a rumor that a bestiality charge involving Johnson was expunged, but clearly concludes "there is no evidence" to support that rumor either. Consistent with the controversy surrounding Johnson, however, the article humorously opines that he is "the kind of guy about whom random people make up and circulate rumors . . . ." *Id.* Thus, the article is a far cry from an actionable accusation of public defecation or bestiality. Dkt. 19 at 12-14.

The PAC further adds some third-party comments and tweets about Trotter Third, but those too are plainly protected by Section 230. PAC, Ex. 42, Statements D-E, G, M, S (Ex. 1-8), T-X, AC-AD, & AH. It also adds a few tweets from Trotter and Howard, but these say nothing more than what is said in the articles – and indeed, in two of them Trotter emphasizes to Johnson "that's why it was a rumor", not a fact, and "we said there was no evidence" with respect to two of the rumors. *Id.*, Statements AA-AB; *see also id.*, Statements AG & AI. In short, the PAC does not plead actionable claims for defamation, or tag-along claims for injurious falsehood and false light, any more than the operative Complaint. Leave to amend should be denied.

      3.      <u>Plaintiffs' Section 1983 Claim Fails As A Matter of Law</u>.

Plaintiffs also seek leave to plead a Section 1983 civil rights conspiracy claim based on Defendants' alleged status as "state actors by virtue of their use of CDA § 230." PAC ¶¶ 265-73. Plaintiffs allege that they have a constitutional right to file defamation lawsuits against their critics, and Defendants are depriving them of those rights under color of law by permitting people to comment anonymously on Gawker's websites and invoking Section 230 in defense of lawsuits such as this one. That is a frivolous claim.

8

First, to be potentially liable under Section 1983 the defendant must be a state actor. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008) ("the party charged with the deprivation must be one 'appropriately characterized as [a] state actor[ ].'" (citation omitted)). Private entities and individuals, including journalists, cannot be considered state actors unless they engage in conduct that may be "fairly attributable to the state." *Montano v. Hedgepeth*, 120 F.3d 844, 849 (8th Cir. 1997). Journalists are not state actors, and Plaintiffs allege no facts showing otherwise. *Mooney v. Jonesboro Sun*, 2007 WL 4532854, at *1 (E.D. Ark. Dec. 13, 2007) ("under even the broadest possible reading of Plaintiff's claims, there is no scenario under which the [the newspaper] can be considered a state actor."); *Maynard v. Greater Hoyt Sch. Dist. No. 61-4*, 876 F. Supp. 1104, 1108 (D.S.D. 1995) (reporter not a state actor for the purposes of Section 1983). Instead, they allege that Defendants are state actors because they invoke their legal rights. That theory would transform every law-abiding citizen into a state actor; suffice it to say that following the law does not turn a private party into a governmental one. *See, e.g.*, *Carlson*, 552 F.3d at 651 (holding that "Defendants' 'mere invocation of state legal procedures' is not state action").

Moreover, it is actually readers who post on Gawker and numerous other websites who have a First Amendment right to engage in anonymous speech. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341 (1995) ("an author's decision to remain anonymous, . . . is an aspect of the freedom of speech protected by the First Amendment"). Indeed, California and Missouri courts have recognized a qualified First Amendment privilege that protects anonymous speakers on websites from people like Johnson who may want to subpoena their critics in order to sue them for defamation. *Krinsky v. Doe 6*, 159 Cal. App. 4th 1154 (2008) (quashing subpoena to unmask identity of internet poster); *Sedersten v. Taylor*, 2009 WL 4802567 (W.D. Mo., Dec. 9,

9

2009) (quashing subpoena to *The Springfield News-Leader* for the identities of posters to its website).  In addition to the fact that the proposed amendment would be futile, the possibility that Plaintiffs may wish to use discovery in this case to try to harass anyone who criticizes them on a Gawker website is a further reason why justice weighs against granting leave to amend.

## CONCLUSION

For the foregoing reasons, Defendants request that Plaintiffs' Motion for Leave to File an Amended Complaint be denied, and that this case be dismissed, with prejudice.

Dated:  November 12, 2015               Respectfully submitted,

**LEWIS, RICE & FINGERSH, L.C.**

By:     /s/ Joseph E. Martineau
    Joseph E. Martineau, #32397
    600 Washington, Suite 2500
    St. Louis, Missouri  63101
    jmartineau@lewisrice.com
    314/444-7729
    314/612-7729 (facsimile)

    Nathan Siegel*
    LEVINE SULLIVAN KOCH & SCHULZ, LLP
    1899 L St., NW, Suite 200
    Washington, DC 20036
    Tel: (202) 508-1100
    Fax: (202) 861-9888
    nsiegel@lskslaw.com
    *pro hac vice*

    *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

  The undersigned certifies that on this 12th day of November, 2015, a copy of the above and foregoing document was filed with the Court and served upon counsel for Plaintiffs via the Court's electronic filing system, as follows:

    Jonathon Christian Burns
    **THE BURNS LAW FIRM**
    1717 Park Avenue
    St. Louis, Missouri  63104
    john@burns-firm.com

    *Attorneys for Plaintiffs*

              By:    /s/ Joseph E. Martineau