**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES C. JOHNSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:15-CV-1137 CAS |
| | ) | |
| GAWKER MEDIA, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This removed diversity matter is before the Court on defendants Gawker Media, LLC, J. K. Trotter and Greg Howard's ("defendants") motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure or, in the alternative, transfer to the Southern District of New York or the Eastern District of California pursuant to 28 U.S.C. § 1404(a). Also in the alternative, defendants move to dismiss plaintiffs' petition on the merits under Rule 12(b)(6). Plaintiffs Charles C. Johnson and Got News, LLC ("plaintiffs") oppose the motion to dismiss and it is fully briefed. For the following reasons, the Court will grant defendants' motion to dismiss for lack of personal jurisdiction.

Also pending are defendants' Special Motion to Strike the Complaint Pursuant to the California Anti-SLAPP Law and plaintiffs' Motion for Leave to File First Amended Complaint, Alternative Motion to Stay the Court's Determination on Defendants' Motion to Strike or Dismiss Pursuant to California's Anti-SLAPP Law, and Motion for Leave to Conduct Discovery pursuant to Rules 56 and 26(f), Fed. R. Civ. P., with respect to the application of the California Anti-SLAPP

Law.  These motions, as well as defendants' alternative motion to transfer or to dismiss on the merits, will be denied as moot.[1]

## I.  Background

Plaintiff Johnson is a journalist and president and owner of plaintiff Got News, LLC, a California corporation and media company that owns Gotnews.com, an internet news and commentary website.  Plaintiff Johnson lives in California.[2]  Plaintiffs filed this action in Missouri state court against Gawker Media, LLC ("Gawker Media"), an online media company and blog network that is the parent company for multiple news and commentary weblogs, including Gawker.com and Deadspin.  The other defendants are two of Gawker Media's writers, J. K. Trotter and Greg Howard.

The petition asserts claims for defamation, injurious falsehood and invasion of privacy (false light) under Missouri law arising from the publication of three articles about Johnson on Gawker Media weblog sites in December 2014.  Two of the articles, titled "What is Chuck Johnson, and Why?  The Web's Worst Journalist, Explained," and "Which of These Disgusting Chuck Johnson Rumors are True?" were written by defendant Trotter and published on Gawker.com; the third

---

[1]Plaintiffs do not assert, and the Court does not find, that anything in plaintiffs' proposed Amended Complaint or motion for discovery would have any effect on the jurisdictional issues discussed herein.

[2]The petition is silent as to plaintiff GotNews, LLC's states of incorporation and principal place of business and plaintiff Johnson's domicile.  The Court takes judicial notice of GotNews, LLC's state of incorporation and principal place of business and plaintiff Johnson's domicile as reflected on GotNews, LLC's and Johnson's widely available internet websites, http://gotnews.com/about/ ("GotNews L.L.C. is a California Corporation); and Charles©Johnson, http://charlescjohnson.com/about/ ("Charles lives in California with his wife") (both last accessed Jan. 15, 2016), as facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).

article, titled "Wait, Did Clowntroll Blogger Chuck Johnson Shit On the Floor One Time?" was written by defendant Howard and published on Deadspin.

Plaintiff Johnson alleges he was defamed and cast in a false light by the "Web's Worst Journalist" article because it (1) included screenshots of false and injurious Twitter[3] postings made by third persons that accused plaintiffs of stalking, harassing and endangering other individuals, and (2) stated that Johnson drew attention to himself as a result of flawed reporting in the Senate Republican Primary race in Mississippi; is well-known for publishing stories that have been proven wrong, including erroneously reporting that the former mayor of Newark, New Jersey did not reside there, and contributing to a fabricated story about New Jersey senator Robert Menendez allegedly soliciting prostitutes in the Dominican Republic; and (3) paraphrased a quote by Johnson, misleadingly stating that Johnson really meant that the deceased Michael Brown, Jr., who was killed by Ferguson, Missouri police officer Darren Wilson, "deserved to die" because he was African American.

The petition states that readers of Gawker Media's weblog articles are able to create online content in response to articles, which the article's author and other readers can then respond to, and instigate and solicit responses from other readers.  Plaintiffs allege that a reader using the name "Cmcalumna" responded to the "Web's Worst Journalist" article and claimed to have attended college with Johnson in California, and defamed and cast him in a false light by stating he had publicly defecated on the floor of a hallway or elevator in college.  Plaintiffs allege that defendant

---

[3]"Twitter is a free social networking microblogging service that allows registered members to broadcast short posts called tweets.  Twitter members can broadcast tweets and follow other users' tweets by using multiple platforms and devices."   WhatIs.com, http://whatis.techtarget.com/definition/Twitter (accessed Jan. 7, 2016).

Trotter incited and solicited additional false and defamatory comments from "Cmcalumna" and other readers on this topic.

Plaintiffs further allege they were defamed and cast in a false light when defendant Howard subsequently wrote the "Clowntroll Blogger" article on Deadspin that adopted the defamatory comments published by "Cmcalumna" on the Gawker.com weblog, encouraged readers to view and provided a hyperlink to the text of the comments, and were further defamed and cast in a false light when "Cmcalumna" then published additional content in response to the Deadspin article.

Finally, plaintiffs allege they were defamed and cast in a false light when Trotter subsequently wrote the "Disgusting Rumors" article on Gawker.com that (1) heavily quoted from "Cmcalumna's" false and defamatory comments and reported that two of Johnson's college classmates stated as a matter of fact that Johnson had defecated publicly in college, and (2) reported that a source stated Johnson had a 2002 bestiality charge expunged from his record, relayed a "graphic allegation of Johnson having sex with a sheep . . . with enough detail to seemingly lend credence to the allegation," and stated that Trotter had contacted the San Bernadino County [California] seeking Johnson's juvenile records related to the alleged charge of bestiality.  Petition at 10, ¶¶ 50, 52-53.  Plaintiffs also assert they have "come under intense, hateful criticism for having sought the juvenile records of Michael Brown, Jr."  Id., ¶ 54.

Plaintiffs filed this action on June 19, 2015 in the Circuit Court of St. Louis County, State of Missouri.  On July 23, 2015, defendants removed the case from state court on the basis of diversity of citizenship and subsequently filed the instant motion to dismiss for lack of personal jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.

The petition alleges that Gawker Media, LLC is a Delaware corporation with its principal place of business in New York, and that the individual defendants are residents of New York.  In

support of the motion to dismiss, defendants submit the Declaration of Courtenay O'Connor, Gawker Media's Deputy General Counsel, which states that Gawker Media operates from its offices in New York, does not send any tangible products into Missouri, does not have any paid subscription agreements with any Missouri internet users, and has no offices, bank accounts or other assets in Missouri; the websites on which the allegedly defamatory articles were published are available to internet users in Missouri just as they are available to any internet user anywhere in the world; and a single employee of Gawker Media telecommutes to New York from his home in Kansas City, Missouri; that employee is not part of Gawker Media's editorial team and had no role in reporting the articles at issue.

Defendant Trotter's Declaration states that he is domiciled in and works in New York; that in reporting the "Disgusting Rumors" article he contacted Johnson, who he understood to be in California when contacted; to the best of his knowledge none of the additional sources he used in reporting the articles live in Missouri and he did not travel to Missouri in the process of his reporting; he owns no real or personal property in Missouri, has no bank account in Missouri, has never voted or been registered to vote in Missouri, and has never been employed in Missouri.

Defendant Howard's Declaration states that he is domiciled in and works in New York; that in reporting the "Clowntroll Blogger" article he contacted Johnson, who he understood to be in California when contacted; to the best of his knowledge none of the additional sources he used in reporting the article lives in Missouri and he did not travel to Missouri in the process of his reporting; he owns no real or personal property in Missouri, has no bank account in Missouri, has never voted or been registered to vote in Missouri, and has never been employed in Missouri.

## II.  Legal Standard

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.'" K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011) (quoting Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004)).  "Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." Id. (internal citations, quotation marks and quoted cases omitted).  The evidence must be viewed in the light most favorable to the plaintiff and all factual conflicts are resolved in its favor in deciding whether the plaintiff made the requisite showing. Id. (cited case omitted).  The burden of proof does not shift to the party challenging jurisdiction, however. Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 820 (8th Cir. 2014)

"The basis for exercising personal jurisdiction over a non-resident party in Missouri is Missouri's long-arm statute." Myers v. Casino Queen, Inc., 689 F.3d 904, 910 (8th Cir. 2012). "Missouri's long-arm statute authorizes personal jurisdiction over defendants who, inter alia, transact business, make a contract, or commit a tort within the state." Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 593 (8th Cir. 2011) (citing Mo. Rev. Stat. § 506.500.1 (2000)).  "In adopting the long-arm statute, the Missouri legislature 'intended to provide for jurisdiction, within the specific categories enumerated in the statutes [e.g., transacting business or making a contract within the state,] to the full extent permitted by the due process clause.'" K-V Pharm. 648 F.3d at 592 (brackets in original) (quoting State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. 1984) (en banc)).  In all instances, the long-arm statute requires

6

that the cause of action arise from the doing of the enumerated act.  Mo. Rev. Stat. § 506.500.3 ("Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.").

Further, "Even if personal jurisdiction over a defendant is authorized by the forum state's long-arm statute, jurisdiction can be asserted only if it comports with the strictures of the Due Process Clause." Viasystems, 646 F.3d at 594.  "The touchstone of the due-process analysis remains whether the defendant has sufficient minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. (internal quotation marks and quoted case omitted).  "The fundamental inquiry is whether the defendant has purposefully availed itself of the benefits and protections of the forum state to such a degree that it should reasonably anticipate being haled into court there[.]" Id. (internal citation, quotation marks and quoted case omitted).

Minimum contacts for purposes of personal jurisdiction may be evaluated under two theories: general jurisdiction and specific jurisdiction. Id.  The Supreme Court recently stated that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014) (internal citations omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" Id. (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853-54 (2011)).  "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'" Daimler AG, 134 S. Ct. at 760 (quoted source omitted).

7

"Specific jurisdiction is proper 'only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities.' Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008)." Johnson v. Arden, 614 F.3d 785, 795 (8th Cir. 2010). Both theories of jurisdiction require "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

## III.  Discussion

### A.  Missouri Long-Arm Statute

Plaintiffs make the conclusory assertion that this Court has personal jurisdiction over the defendants pursuant to two of the Missouri's long-arm statute's provisions: transaction of business within the state, § 506.500.1(1), or commission of a tortious act within the state, § 506.500.1(3). Pls.' Mem. Opp at 1.  Plaintiffs do not explain how the defendants are subject to jurisdiction under the Missouri long-arm statute, and do not cite any legal authority interpreting the statute's provisions.  Instead, plaintiffs immediately turn to a discussion of factors relevant to specific jurisdiction and due process under federal law.  Id.

Plaintiffs bear the burden to establish the existence of personal jurisdiction in the face of defendants' challenge.  Fastpath, 760 F.3d at 820.  Their failure to discuss how the facts of this case fit within the Missouri long-arm statute would likely be fatal to their position, but for the fact that their discussion of specific jurisdiction includes some arguments that are relevant to the two claimed bases of jurisdiction under the long-arm statute.  The Court will discuss each separately.

8

1. *Transaction of Any Business*

Plaintiffs assert that defendants "have established business transactions with Missouri businesses and customers by specifically directing advertising based on intricate demographic data allowing custom-tailored advertising, to its million-plus Missouri readers." Pls.' Mem. Opp. at 2. These conclusory assertions are not supported by affidavits or other evidence.[4]  In support of their reply memorandum, defendants submit the Declaration of Ryan Brown, which states that advertisements that appeared in connection with the three articles were placed by Google through its nationwide AdSense program, a third-party advertising program.

The Missouri Supreme Court has instructed that the long-arm statute's "transaction of any business" prong must be construed broadly, and "if a defendant transacts business within the state the statute provides for jurisdiction to 'the full extent permitted by the due process clause.'" Downing v. Goldman Phipps, PLLC, 764 F.3d 906, 911 (8th Cir. 2014) (quoting State ex rel. Metal Serv. Ctr. of Ga., Inc., v. Gaertner, 677 S.W.2d 325, 327 (Mo. 1984) (en banc)).

The Missouri Supreme Court does not appear to have addressed whether advertising can constitute the "transaction of any business" under the long-arm statute.  The Missouri Court of Appeals found personal jurisdiction under the transaction of business prong where a foreign corporation sent allegedly false advertising into Missouri concerning its equipment, sold the advertised equipment to a Missouri business through a distributor, and the cause of action arose out

_____

[4]Plaintiffs do not allege that Gawker Media has sold any products to any Missouri resident. Plaintiffs allege in the petition that Gawker Media has 64 million unique monthly readers in the United States.  Pet. at 4, ¶8 & n.1.  Plaintiffs state in their opposition memorandum that there are more than one million unique Missouri users of Gawker Media based on "Quantcast demographic data."  Pls. Mem. Opp. at 5.  Plaintiffs do not support the latter assertion with an affidavit, declaration or other evidence.  Assuming it to be true, Missouri residents constitute approximately 1.6 percent of monthly Gawker Media readers.

of the advertised equipment.  Simpson v. Dycon Intern, Inc., 618 S.W.2d 455, 457 (Mo. Ct. App. 1981)).  Noting that two of the three parties to the action were Missouri residents, the court stated, "Missouri has a substantial interest in protecting its citizens from allegedly false advertising literature concerning a product sold in this state."  Id.  See also Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc., 702 F.3d 472, 476 (8th Cir. 2012) (citing Simpson).

The instant case is readily distinguishable from Simpson, because here the defendants did not physically send advertising literature into Missouri for distribution, did not sell a product to a Missouri resident based on that advertising and, most significantly, plaintiffs' causes of action do not arise out of defendants' internet advertising.  The Court concludes that Gawker Media's placement of advertising on its internet websites through a third-party provider, targeted to residents of Missouri, does not constitute the "transaction of any business within this state" under the long-arm statute where the claims asserted do not arise out of the advertising.[5]  Mo. Rev. Stat. § 506.500.3

### 2.  *Commission of a Tortious Act Within Missouri*

Plaintiffs assert that defendants have committed a tortious act in Missouri by "targeting Plaintiffs with defamatory articles for the purpose of destroying Plaintiffs' business and discrediting Plaintiffs in the state of Missouri and among its residents," and "by actually causing harm to Plaintiffs' reputation in the state of Missouri among its residents."  Pls.' Mem. Opp at 3-4.  Plaintiffs assert, without evidentiary support, that Gawker Media writers including defendants Howard and Trotter have Twitter followers who reside in the State of Missouri, id. at 4, and that Gawker Media

---

[5]See also Henriquez v. El Pais Q'Hubocali.com, 500 F. App'x 824, 828-29 (11th Cir. 2012) (generic website ads were insufficient to satisfy the "transacting business" prong of Georgia's long-arm statute because the defamation claim did not arise out of the ads; "The fact that a particular website displays an advertisement that is viewable in Georgia or shows a company that does business in Georgia does not, by itself, mean that the website owner had any contact with Georgia.").

writers tweeted defamatory statements about Johnson and hyperlinks to the three allegedly defamatory articles written about Johnson.

The "commission of a tortious act" prong of the long-arm statute is also broadly construed. See Bryant v. Smith Interior Design Group, Inc., 310 S.W.3d 227, 232 (Mo. 2010) (en banc). Missouri courts have interpreted it to include "extraterritorial acts of negligence producing actionable consequences in Missouri." State ex rel. William Ranni Assocs., Inc. v. Hartenbach, 742 S.W.2d 134, 139 (Mo. 1987) (en banc). The Eighth Circuit recently adopted a foreseeability standard to be applied when evaluating whether jurisdiction is appropriate over a tortious act occurring in another state with actionable consequences in Missouri. Myers, 689 F.3d at 911. Under this standard, if a defendant can reasonably foresee his or her negligent actions having consequences felt in Missouri, jurisdiction is authorized. Id. In addition, a party seeking to invoke long-arm jurisdiction based on a defendant having committed a tort within Missouri must make a prima facie showing of the validity of his tort claim. State ex rel. William Ranni Assocs., 742 S.W.2d at 139.

Here, the allegedly defamatory articles were published on the internet and are therefore viewable anywhere in the world. One of the three articles, "Web's Worst Journalist," discusses plaintiff Johnson's reporting on the killing of Michael Brown, Jr. in Ferguson, Missouri, although it was not the primary subject of the article and was only one of several topics discussed therein. Plaintiffs do not allege that they are Missouri residents or have specific business or personal interests in Missouri, but make the conclusory assertion that the allegedly defamatory statements in the three articles were intentionally targeted to the State of Missouri. Pet. at 15, ¶70; at 18 ¶ 85. Plaintiffs assert that publication of the statements damaged their business and reputation, but do not assert that they suffered damage in Missouri. Id. at 15, ¶¶ 73-75; at 19, ¶¶ 89-91.

11

As a threshold matter, the Missouri long-arm statute does not limit its application only to cases brought by plaintiffs who are Missouri residents.  Mo. Rev. Stat. § 506.500; see, e.g., Hollinger v. Sifers, 122 S.W.3d 112 (Mo. Ct. App. 2003) (Kansas resident plaintiffs); Norman v. Fischer Chevrolet-Oldsmobile, Inc., 50 S.W.3d 313 (Mo. Ct. App. 2001) (Florida resident plaintiff).

The Supreme Court has stated that the "tort of libel is generally held to occur wherever the offending material is circulated" and that the "reputation of the libel victim may suffer harm even in a state in which he has hitherto been anonymous."  Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 777 (1984).  The allegedly defamatory articles at issue in this case were viewable in Missouri. The Court finds, under the applicable foreseeability standard, that the defendants could have reasonably foreseen their publication of the articles could have consequences felt in Missouri.  The Court will assume without deciding that plaintiffs have made a prima facie showing of the validity of their defamation claims, and therefore concludes the commission of a tortious act prong of the Missouri long-arm statute is met.

B.  Due Process Principles

1.  *Specific Jurisdiction*

To establish specific jurisdiction, plaintiffs must demonstrate both that (1) "a defendant's conduct was covered by the [Missouri] long-arm statute," and (2) "the exercise of jurisdiction comports with due process requirements."  Myers, 689 F.3d at 909 (citation omitted).  The first part of the analysis is controlled by state law, as discussed above, and the second by federal law. Fairbanks Morse Pump Corp. v. ABBA Parts, Inc., 862 F.2d 717, 718-19 (8th Cir. 1988).  The Court turns to the second part of the personal jurisdiction analysis and examines whether the exercise of jurisdiction over the defendants comports with due process principles.

12

A federal court may exercise diversity jurisdiction over a nonresident defendant only if the defendant has sufficient minimum contacts with the forum that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."   International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks and quoted case omitted).  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Hanson, 357 U.S. at 253.  Due process is satisfied and jurisdiction may be exercised when the defendant's contacts with the forum state are such that it "should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980).

"Five factors determine whether sufficient contacts exist to support the exercise of personal jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. The first three factors are primary, but all five and the totality of the circumstances determine whether personal jurisdiction exists."  Dairy Farmers, 702 F.3d at 477 (internal quotation marks and quoted case omitted).  In all cases, specific jurisdiction is proper "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities."  Steinbuch, 518 F.3d at 586.

When the cause of action involves a tortious act, a plaintiff also can obtain specific jurisdiction over a nonresident defendant by employing the "effects test" of Calder v. Jones, 465 U.S. 783, 789-90 (1984).  Under the Calder effects test,

a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state].

Johnson, 614 F.3d at 796 (internal quotation omitted).  The Calder effects test does not replace the Eighth Circuit's five-part test for personal jurisdiction, but "requires the consideration of additional factors when an intentional tort" is alleged.  Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1391 (8th Cir. 1991).  The Eighth Circuit "construe[s] the Calder effects test narrowly, and hold[s] that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction."  Johnson, 614 F.3d at 797.

In considering the sufficiency of internet contacts under a specific jurisdiction analysis, the Eighth Circuit has also applied the analytical framework of Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa.1997).  See Lakin v. Prudential Sec., Inc., 348 F.3d 704, 710-11 (8th Cir. 2003).  In Zippo, the court created a "sliding scale" to measure the likelihood of personal jurisdiction, that ranged from active contract formation and repeated transmission of computer files on one end to the mere posting of information on a website on the other end.  Zippo, 952 F. Supp. at 1124; see also Johnson, 614 F.3d at 796.

In Johnson, the Eighth Circuit addressed specific jurisdiction in the context of alleged defamation on the internet, and concluded that accessibility in Missouri to a website that allowed "mere posting" and offered no interaction between users and a host computer was insufficient to confer personal jurisdiction.  614 F.3d at 796.  The Court also stated that whether specific jurisdiction can arise on the basis of an interactive website "depends not just on the nature of the website but also on evidence that individuals in the forum state accessed the website in doing business with the defendant." Id. at 797 (citing Zippo, 952 F.Supp. at 1125-26).  The Eighth Circuit

14

declined to find personal jurisdiction "based only on mere possibility that a Missouri resident had contact" with the defendant through the website, even though the allegedly defamed plaintiffs were Missouri residents who operated a business in Missouri.  Johnson, 614 F.3d at 797.

In this case, both Gawker Media's and the individual defendants' contacts with the State of Missouri are limited to publication of articles on internet websites that can be viewed from Missouri. Gawker Media is a Delaware corporation with its principal place of business in New York.  It does not send any tangible products into Missouri, does not have any paid subscription agreements with any Missouri internet users, and has no offices, bank accounts or other assets in Missouri.  Gawker Media has one employee who lives in Missouri and telecommutes to New York; that employee is not part of Gawker Media's editorial team and had no role in reporting the articles at issue.  The websites on which the allegedly defamatory articles were published are available to internet users in Missouri just as they are available to any internet user anywhere in the world.  Gawker Media's websites include advertisements placed through Google's AdSense that target Missouri residents.

The individual defendants are domiciled in and work in New York; to the best of their knowledge none of the sources they used in reporting the articles live in Missouri; they did not travel to Missouri in the process of the reporting; they own no real or personal property in Missouri, have no bank accounts in Missouri, have never voted or been registered to vote in Missouri, and have never been employed in Missouri.

Plaintiffs' support for specific jurisdiction are two sets of actions by defendants: publishing allegedly defamatory articles on Gawker.com and Deadspin that were viewable by Missouri residents, and directing advertising on the websites targeted to Missouri residents.  The question for both sets of actions is whether defendants "purposefully directed" their internet activities at the State of Missouri.  See Johnson, 614 F.3d at 795.

15

a.  <u>Nature and Quality of Contacts</u>

With respect to first factor of the five-factor test, the nature and quality of the defendants' contacts with the forum state, the Court rejects the significance of the contacts related to advertising directed to Missouri residents because, as discussed above, the claims here are grounded in tort. Defendants' publication of allegedly defamatory articles concerning the plaintiffs form the basis of plaintiffs' claims, not their actions in displaying ads of interest to Missouri residents.

The mere fact that Gawker Media's websites are accessible in Missouri or that they provide the possibility a Missouri resident might have contact with the defendants by leaving comments to an article is not sufficient, alone, to confer personal jurisdiction.  <u>See</u> <u>Johnson</u>, 614 F.3d at 796-97. Gawker Media's websites are not accessible to Missouri residents to any greater extent than to anyone else in the world with an internet connection.  There is no evidence the websites have particular content directed specifically at Missouri residents or that defendants intended to target residents of Missouri more than residents of any other state or country.  The record does not indicate that visitors to Gawker Media's websites can utilize them to purchase anything from the defendants. Readers can view, download or share articles, and the websites are interactive to the extent that readers can post comments concerning articles and respond to other readers' comments, and the articles' authors can respond to readers' comments and post additional comments of their own.  The Court finds that Gawker Media's websites fall in the middle portion of the <u>Zippo</u> sliding scale, in terms of the nature and quality of the exchange of information they permit.  There is no evidence that any Missouri residents read the articles at issue, or that any of those who commented on the articles were Missouri residents.

In the absence of any evidence that the out-of-state defendants' internet activity is expressly targeted at or directed to Missouri, even when viewing the facts in the light most favorable to

16

plaintiffs, the Court finds that plaintiffs do not meet their "minimal" burden to show that this factor weighs in favor of the exercise of personal jurisdiction over the defendants.

### b. Quantity of Contacts

The second factor in the five-factor test of personal jurisdiction is "the quantity of those contacts" with the forum state.  Myers, 689 F.3d at 911.  As stated above, there are no allegations of "sales" from the websites, but plaintiffs allege without evidentiary support that Gawker Media has 64 million unique monthly readers in the United States, one million of which (or approximately 1.6 percent) are Missouri residents.  As stated above, plaintiffs do not allege that any Missouri residents read or commented on the articles at issue.[6]

Viewing the facts in the light most favorable to plaintiffs, the Court concludes plaintiffs have not met their "minimal" burden of proof with respect to the quantity of contacts with the forum state.

### c. Relationship Between the Contacts and the Cause of Action

The third element in the five-element test of personal jurisdiction is the relationship of the contacts with the cause of action.  Here, the defendants' contacts of publishing allegedly defamatory articles on the internet that are viewable in Missouri are related to plaintiffs' defamation action.  The Court concludes plaintiffs have met their "minimal" burden of proof with respect to the relationship between the contacts and the cause of action, but in the absence of proof of the other factors, the existence of this factor alone cannot confer jurisdiction.

---

[6]The Court notes that although plaintiffs have filed a motion to conduct discovery, they do not seek jurisdictional discovery but rather discovery into whether the California Anti-SLAPP law can be properly applied in federal court.

d.  The Interest of the Forum State and the Convenience of the Parties

The final two elements of the test for personal jurisdiction are secondary to the first three. Myers, 689 F.3d at 911.  The fourth element, Missouri's interest in providing a forum for its residents, weighs against the exercise of personal jurisdiction because Missouri has at most a minor interest in providing a forum for nonresident defamation plaintiffs with no real connections to the state.  The fifth factor, the convenience of the parties, also weighs against the exercise of personal jurisdiction.  A trial in Missouri would not be convenient for either side, as plaintiffs are located in California and defendants in New York, and plaintiffs cite no other factors such as location or convenience of witnesses or proximity to evidence that would cause Missouri to be a convenient forum.

e.  Calder "Effects Test"

Accepting plaintiffs' allegations as true, the Court concludes that plaintiffs fail to make a prima facie showing with respect to the second and third Calder factors, namely, that the defendants uniquely or expressly aimed their conduct at the forum state, and knew that the plaintiffs would feel the effects in the forum state.

As to the second factor, although plaintiffs make the conclusory allegation that defendants aimed their conduct at Missouri, they plead no facts to support the allegation.  The Eighth Circuit construes the Calder "effects test" narrowly and with respect to the second Calder factor holds that the tortious acts must be expressly aimed at the forum.  Johnson, 614 F.3d at 797 (stating that "[p]osting on the internet from Colorado an allegedly defamatory statement including the name "Missouri" does not create the type of substantial relationship between defendant and the forum required to confer personal jurisdiction").  Only a defendant's extraterritorial acts taken for the express purpose of causing harm in the forum state are sufficient to satisfy Calder's "express-aiming

18

requirement."  See id.  There is nothing in the record to indicate Gawker Media targeted its website, or the individual defendants their articles, toward the State of Missouri as opposed to the United States or the world as a whole.  As such, plaintiffs have failed to plead sufficient facts to support the second requirement under Calder.  See Dakota Indus., Inc., 946 F.2d at 1391 (stating that a defendant's acts be "performed for the very purpose of having their consequences felt in the forum state")

With respect to the third Calder factor, although the "tort of libel is generally held to occur wherever the offending material is circulated" and the "reputation of the libel victim may suffer harm even in a state in which he has hitherto been anonymous," Keeton, 465 U.S. at 777, there are no factual allegations pleaded to show the defendants knew that plaintiffs, who appear to have no contacts of any nature or quality with Missouri, would feel effects of defamation here.  Further, "absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." Johnson, 614 F.3d at 797 (citing Hicklin Eng'g, Inc. v. Aidco, Inc., 959 F.2d 738, 739 (8th Cir. 1992)).  There are no additional contacts present between the defendants and Missouri to justify conferring personal jurisdiction in this forum.

### f.  "Fair play and substantial justice" in the totality of the circumstances

Finally, due process requires that "[c]ontacts with the forum state must be sufficient that requiring a party to defend an action would not 'offend traditional notions of fair play and substantial justice.'" Myers, 689 F.3d at 911 (quoting International Shoe Co., 326 U.S. at 316).  The Court must consider "the totality of the circumstances in deciding whether personal jurisdiction exists."  K-V Pharm. Co., 648 F.3d at 592-93.  Here, viewing the totality of the facts in the light most favorable to plaintiffs, plaintiffs have failed to meet their "minimal" burden of proof to show that the balance of the factors weighs in favor of the exercise of personal jurisdiction over the

19

defendants in Missouri.  The defendants' lack of direct contacts with Missouri demonstrates that exercising personal jurisdiction over them here would "offend traditional notions of fair play and substantial justice."  Myers, 689 F.3d at 911 (internal quotation marks and citation omitted).

Consideration of the relevant factors leads to the conclusion that dismissal for lack of personal jurisdiction over defendants Gawker Media, Trotter and Howard is appropriate.

### 3.  *General Jurisdiction*

Plaintiffs also assert that the Court has general personal jurisdiction over the defendants based on their ongoing and continuous internet presence in Missouri, the million-plus monthly Missouri readers, and defendants' targeting of ads to Missouri residents.

This argument fails.  As previously stated, the Supreme Court recently instructed that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there."  Daimler AG, 134 S. Ct. at 760.  For an individual, this will normally be the individual's domicile, and for a corporation, it will be the place of incorporation and principal place of business. Id.  To find general jurisdiction in a different forum than these is appropriate only in an "exceptional case."  Id. at 761, n.19.  This case is not an exceptional one, as the defendants have few contacts here, let alone contacts that would render them "at home" in Missouri.

## IV.  Conclusion

In this case, viewing the facts in the light most favorable to plaintiffs, plaintiffs have failed to meet their "minimal" burden of proof to show that the balance of the relevant factors weighs in favor of the exercise of personal jurisdiction over the defendants in this forum.  For the reasons discussed above, the Court concludes that defendants' contacts with Missouri are insufficient to indicate they purposely availed themselves of the benefits and protections of the laws of Missouri, see Burger King, 471 U.S. at 482, such that they should have reasonably anticipated being haled into

court here.  See World-Wide Volkswagen Corp., 444 U.S. at 297.  As a result, to compel the defendants to appear in court in this forum would offend traditional notions of fair play and substantial justice.  See International Shoe Co., 326 U.S. at 316.  Further, plaintiffs have failed to make a prima facie showing that the defendants' actions were sufficiently directed at Missouri to satisfy the Calder test.  Therefore, the Court will grant defendants' motion to dismiss for lack of personal jurisdiction and deny all other pending motions as moot.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., is **GRANTED**.  [Doc. 14]

**IT IS FURTHER ORDERED** that defendants' alternative motions to transfer for improper venue and to dismiss or strike under the California Anti-SLAPP law are **DENIED as moot**.  [Doc. 20]

**IT IS FURTHER ORDERED** that plaintiffs' motions for leave to file an amended complaint, to stay the Court's determination on defendants' motion to strike or dismiss pursuant to California's Anti-SLAPP law, and plaintiffs' motion to conduct discovery with respect to whether California's Anti-Slapp law is precluded by federal law, are **DENIED as moot**.  [Docs. 45, 62, 65]

An appropriate order of dismissal will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  15th  day of January, 2016.